## THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

v.

TRADERS DOMAIN FX LTD. d/b/a
THE TRADERS DOMAIN;
FREDIRICK TEDDY JOSEPH
SAFRANKO a/k/a TED SAFRANKO;
DAVID WILLIAM NEGUS-
ROMVARI; ARES GLOBAL LTD.
d/b/a TRUBLUEFX; ALGO CAPITAL
LLC; ALGO FX CAPITAL ADVISOR
LLC n/k/a QUANT5 ADVISOR, LLC;
ROBERT COLLAZO, JR.; JUAN
HERMAN a/k/a JJ HERMAN; JOHN
FORTINI; STEVEN LIKOS;
MICHAEL SHANNON SIMS;
HOLTON BUGGS, JR; CENTURION
CAPITAL GROUP INC.;
ALEJANDRO SANTIESTABAN a/k/a
ALEX SANTI; GABRIEL BELTRAN;
and ARCHIE RICE,

Defendants.

Civil Case No. 1:24-cv-23745-RKA

## RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANT HOLTON BUGGS, JR. IN CIVIL CONTEMPT AND MEMORANDUM OF LAW IN SUPPORT

Kelly M. Crawford as this Court's appointed Receiver respectfully requests a hearing

requiring Defendant Holton Buggs, Jr. ("Buggs") to appear and show cause as to why he should

---

**RECEIVER'S MOTION FOR SHOW CAUSE HEARING**                    **PAGE 1**

not be held in civil contempt for his intentional violations of the clear orders of this Court, and in support thereof, the Receiver respectfully states as follows.

## I.
## FACTUAL BACKGROUND

1.      On October 3, 2024, this Court entered an *Order Granting Plaintiff's Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO" or "Court's Order")* [Dkt. No. 10]. Pursuant to the *SRO,* this Court appointed Kelly M. Crawford as Receiver of the assets of the Defendants, including Defendant Buggs, and vested the Receiver with certain authority to recover assets, records, and investigate claims.

2.       Buggs had actual notice of the *SRO* on October 23, 2024, when the Receiver sent the SRO and a letter to Buggs' counsel outlining Buggs' obligations under the *SRO* and the timeframe for Buggs to comply with the *SRO*'s obligations.[1]

3.      Buggs is violating paragraphs 31A, 32, 33, and 34B of the *SRO*, as follows:

    a.  Buggs failed to provide the Receiver with "a full detailed accounting of all assets" held by Defendant Buggs as required by the *SRO*, ¶ 31A.[2]

    b.  Buggs failed to provide the Receiver with "a detailed and complete schedule of all passwords and identification (ID) numbers for all website, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any ban, financial institution, or brokerage firm" controlled or operated

---

[1]  *Declaration of Receiver Kelly Crawford*, attached hereto as **Exhibit A** (the "Receiver's Declaration), ¶ 2, Exh. A-1.

[2]  The *SRO* requires a "*full detailed accounting of all assets. . . that are held by each and every Defendant, for their benefit, or under their direct or indirect control. . . and the location of all records of the Receivership Estate.*" *SRO*, ¶ 31A

by Defendant Buggs or to which Defendant Buggs has access, as required by the *SRO*, ¶ 32[3].

    c.  Buggs failed to provide the Receiver with "a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used" by Defendant Buggs in connection with his business activities and business and personal finances, as required by the *SRO*, ¶33[4].

    d.  Buggs failed to turn over possession and custody of Defendant Buggs' records in connection with his business activities and business and personal finances, as required by the *SRO*, ¶ 34(b)[5]

    4.    On November 5, 2024, the Receiver served Buggs' counsel with a notice to take the asset deposition of Buggs on November 14, 2024.[6]  The day before the deposition, on November 13, 2024, Buggs' counsel informed the Receiver for the first time that the date for the deposition did not work.[7]  The Receiver informed Buggs' counsel that the Receiver intended to proceed with the deposition on November 14, 2024 unless Buggs' counsel agreed to produce

---

[3]   The *SRO* requires Defendants to provide the Receiver with *"a detailed and complete schedule of all passwords and identification (ID) numbers for all website, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm . . . controlled or operated by or which any of the Defendants have access in connection with their business activities and business and personal finances."* SRO, ¶ 32.

[4]   The *SRO* requires that the Receiver receive from the Defendants *"a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Defendants in connection with his business activities and business and personal finances." SRO*, ¶ 33.

[5]   The *SRO* requires the Defendants to turn over to the Receiver *"[p]ossession and custody of records of the Receivership Defendants in connection with their business activities and business and personal finances, including but not limited to, all records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other Receivership Defendants". SRO*, ¶ 34b.

[6]   Receiver's Declaration, ¶4.

[7]   *Id.*

---

Buggs for an asset deposition on one of four dates the Receiver was available.[8]  Buggs' counsel ignored the request of the Receiver.  Consequently, the Receiver proceeded with the deposition on November 14, 2024, as properly noticed under the Federal Rules of Civil Procedure and the *SRO*. Neither Defendant Buggs nor his counsel appeared at the deposition and the Receiver took a notice of non-appearance.[9]  On the afternoon of November 14, 2024, after the no-show at the deposition, counsel for Defendant Buggs informed the Receiver that:

> "*it doesn't make sense to schedule a deposition for a date certain since key motions are still pending before the Court (a motion to dismiss the CFTC's suit against Mr. Buggs and a motion to dissolve the Receivership that exists only because of the suit). That said, we're fine flagging December 4 for a potential deposition date, and we can revisit the precise timing as we get closer to the preliminary date.*"[10]

5.      The failure of Defendant Buggs to appear at his properly noticed asset deposition, only to thereafter propose a "potential deposition date" violates paragraph 35 of the SRO, which directs  all persons or entities served with a copy of the *SRO* to "cooperate fully with and assist" the Receiver.  This cooperation and assistance shall include, … *providing any information to the Temporary Receiver that the Temporary Receiver deems necessary*. . ."  (emphasis added).

6.       The Receiver sent a letter to Buggs' counsel on November 18, 2024,  giving notice of the Receiver's intent to file this  motion due to  Buggs' multiple violations of the SRO.[11]

## II.
## JURISDICTION

7.      This Court has jurisdiction to enforce the *SRO* against Buggs pursuant to 28 U.S.C. §754, which provides that *"a receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required*

---

[8]   Receiver's Declaration, ¶4, Exh. A-2.
[9]    *Id.*
[10]   *Id.*
[11]   Receiver's Declaration, ¶ 6.

*by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof."* In compliance with 28 U.S.C. §754, the Receiver filed a copy of the Complaint and the *SRO* in the Southern District of Texas within 10 days of the issuance of the *SRO.*[12] Accordingly, Buggs is subject to the jurisdiction of this Court to consider his failure to comply with the *SRO* as alleged by the Receiver. *See Steinberg v. A Analyst Ltd.,* No. 04-60898-CIV, 2009 WL 806780, at *3 (S.D. Fla. Mar. 26, 2009) (holding that courts possess personal jurisdiction under Section 754 over defendants to an ancillary case brought by the receiver where receiver timely filed the order appointing him and the underlying complaint in the appropriate district court).

### III.
### ARGUMENT

District courts possess inherent power to enforce their orders though contempt proceedings. *Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1302 (11th Cir. 1991) (citing *Shillitani v. United States,* 384 U.S. 364, 370 (1966). The Eleventh Circuit identifies three elements for civil contempt: 1) there was a lawful and valid order; 2) the order was clear, definite, and unambiguous; and 3) the alleged violator had the ability to comply with the order. *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014).

The Court's proper focus is whether the order was violated, not the subjective belief or intent of the alledged violator. *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1546 (11th Cir. 1990). Further, civil contempt may serve two different purposes: enforcing compliance with an order or compensating an injured party. *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, No. 14-22739-CIV, 2017 WL 2875427 (S.D. Fla. May 15, 2017), *report and recommendation adopted,* No. 14-22739-CIV, 2017 WL 3835692 (S.D. Fla. Sept. 1, 2017).

---

[12]   Receiver's Declaration, ¶ 3.

Each of the elements for civil contempt exists with respect to Buggs.  The *SRO* is a Court order that was and still is in effect. *See SRO*. The *SRO* clearly and unambiguously orders Buggs, as a Receivership Defendant, to provide information to the Receiver, and cooperate with the Receiver.  *See SRO* ¶¶ 31, 32, 33, 34, 35, 36.  Defendant. Buggs, after having notice of the *SRO*, is in violation of these specific orders in the SRO as described above.  Indeed, Defendant Buggs seems to believe that simply because he is contesting jurisdiction and the receivership itself, Defendant Buggs is free to ignore the orders of this Court.  Other than allowing the Receiver's attorneys to inspect one of Buggs' multiple houses[13], Buggs has not provided *any* information to the Receiver as required by the SRO.  It is apparent from his actions that Buggs believes he can simply ignore the specific provisions of the SRO and excuse himself from compliance until his motions are ruled upon by the Court.

In seeking to identify and secure assets as part of a receivership, time is of the essence and dissipation a significant risk.  It is for that specific reason that the SRO includes specific time frames in which significant information must be turned over by Defendant Buggs to the Receiver.  Those deadlines for turning over information to the Receiver, as set forth in the SRO, have long expired and the Receiver continues to be in the dark about Defendant Buggs' assets.  This is contrary to the intent and purpose of the *SRO* and Buggs' refusals to comply with the SRO should not be condoned by the Court.

## IV.
## RELIEF REQUESTED

In order to maintain the integrity of its own Order, and to ensure that this Court's Orders are not casually disregarded, this Court should order Defendant Buggs to appear in person before

---

[13]   Receiver's Declaration, ¶ 5.

the Court and show cause as to why he should not be held in civil contempt for violating the *SRO*. Moreover, the Receiver requests the Court, at such hearing, to find Buggs in civil contempt and enter an order that: 1) compels immediate turnover of the assets, information, and records as required in the *SRO*; 2) compels the immediate turnover of a full accounting of Buggs' assets to the Receiver as reqired by the *SRO*; 3) imposes a fine of $11,083.40[14] in reasonable attorney's fees and expenses to compensate the receivership estate for the efforts expended by the Receiver and his attorneys to obtain Buggs' compliance with the *SRO*; and 4) imposes a coercive sanction of $500 for each additional day of non-compliance. *See Torchia,* No. 1:15-CV-3904-WSD, 2017 WL 4423416 at *4.*

## V.
## CONCLUSION

This Court's Order appointing the Receiver to secure and gather assets for distribution to the victims of the Defendants' fraudulent scheme cannot simply be ignored by Defendant Buggs. The contemptuous actions of Buggs are causing a significant delay in the Receiver's ability to recover assets and investigate claims. In order to maintain the integrity of its own orders, and to ensure that this Court's *SRO* is not casually disregarded, this Court should order Buggs to appear before the Court and show cause as to why he should not be held in civil contempt for violating the *SRO*. At the conclusion of the hearing, the Receiver requests that Buggs be sanctioned as described above until such time as he purges himself of the contempt.

WHEREFORE, the Receiver respectfully requests that the Court enter an order setting a hearing at which Buggs is ordered to appear and show just cause as to why he should not be held in civil contempt of court for his numerous violation of the *SRO;* that upon such hearing, the Court

---

[14]   Receiver's Declaration, ¶ 7.

order that  Buggs be sanctioned as described above until such time as he fully complies with the

*SRO*, and grant such other and further relief, to which the Receiver may be justly entitled.

Respectfully submitted,

*/s/ Melanie E. Damian*
Melanie E. Damian
Florida Bar No. 99392
Email: mdamian@dvllp.com
Russell Landy
Florida Bar No. 44417
Email: rlandy@dvllp.com
DAMIAN | VALORI | CULMO
*Counsel for Kelly Crawford, Court-*
*Appointed Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

**ATTORNEY FOR RECEIVER**


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 27th day of November, 2024, I electronically filed the foregoing document with the clerk of the U.S. District Court, Southern District of Florida, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/  Melanie Damian*
MELANIE DAMIAN

## <u>CERTIFICATE OF CONFERENCE</u>

On November, 27, 2024, counsel for the Receiver conferred by phone with Barak Cohen, co-counsel for Defendant Holton Buggs in the above referenced matter, who confirmed that his client opposes the relief sought in this motion due to the pending motions filed by Defendant Buggs challenging, amongst other things, the receivership and/or jurisdiction of the Court over Defendant Buggs.


<u>*/s/ Kelly M. Crawford*</u>
KELLY M. CRAWFORD

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

COMMODITY FUTURES
TRADING COMMISSION,

**Plaintiff,**

v.

TRADERS DOMAIN FX LTD. d/b/a
THE TRADERS DOMAIN;
FREDIRICK TEDDY JOSEPH
SAFRANKO a/k/a TED SAFRANKO;
DAVID WILLIAM NEGUS-
ROMVARI; ARES GLOBAL LTD.
d/b/a TRUBLUEFX; ALGO CAPITAL
LLC; ALGO FX CAPITAL ADVISOR
LLC n/k/a QUANT5 ADVISOR, LLC;
ROBERT COLLAZO, JR.; JUAN
HERMAN a/k/a JJ HERMAN; JOHN
FORTINI; STEVEN LIKOS;
MICHAEL SHANNON SIMS;
HOLTON BUGGS, JR; CENTURION
CAPITAL GROUP INC.;
ALEJANDRO SANTIESTABAN a/k/a
ALEX SANTI; GABRIEL BELTRAN;
and ARCHIE RICE,

**Defendants.**

Civil Case No. 1:24-cv-23745-RKA

## <u>DECLARATION OF RECEIVER KELLY M. CRAWFORD</u>

I, Kelly M. Crawford, declare that:

1.     I am the Receiver in this case, appointed pursuant to the *Sealed Order Granting*

*Plaintiff's Expedited Motion for An Ex Parte Statutory Restraining Order, Appointment of a*



1

*Temporary Receiver, and Other Equitable Relief* [Docket 10](the "*SRO*") entered by this Court on October 3, 2024 [Dkt. No. 10].

2.       On   October 23, 2024, I sent Buggs, through his counsel, a letter enclosing a copy of the SRO, outlining Buggs' obligations under the *SRO* and the timeframe to comply with his obligations under the SRO.  A true and correct copy of this letter is attached hereto as **Exhibit A-1.**

3.       Within the 10 day period provided under 28 U.S.C. §754, I filed a copy of the Complaint and the *SRO* in the Southern District of Texas where Buggs has his primary residence.

4.       On November 5, 2024, I served Buggs, through his counsel, a notice to take the asset deposition of Buggs on November 14, 2024. Buggs' counsel waited until the day before the deposition to inform my counsel that the date for the deposition did not work. My counsel informed Buggs' counsel that the deposition would still take place on November 14, 2024, unless Buggs would agree to a deposition on one of four dates that I was available.  Buggs and his counsel refused to agree to a new date for the deposition prior to the deposition scheduled for November 14, 2024.  Accordingly, I proceeded with the deposition as noticed on November 14, 2024. Buggs and his counsel did not appear for the deposition.  Subsequent to the deposition, Buggs' counsel informed my counsel as follows:

> *"it doesn't make sense to schedule a deposition for a date certain since key motions are still pending before the Court (a motion to dismiss the CFTC's suit against Mr. Buggs and a motion to dissolve the Receivership that exists only because of the suit). That said, we're fine flagging December 4 for a potential deposition date, and we can revisit the precise timing as we get closer to the preliminary date."*

A true and correct copy of the email exchange is attached hereto as **Exhibit A-2.**

5.       On November 7, 2024, my counsel, Peter Lewis and Shirley Rose, traveled to Houston, Texas to inspect one of the multiple houses owned by Buggs. Buggs and his counsel

were present at the house and allowed my counsel to inspect the premises. The house  inspected is located at 3102 Noble Lakes Lane, Houston, Texas 77082. I am aware of other houses Buggs owns.  Specifically, I believe Buggs owns houses located at: 3503 St. Tropez Way, Houston, Texas 77082 and 2007 Shadow Briar Drive, Houston, Texas 77077.

6.     Other than allowing my counsel to inspect one of his houses, Buggs has not complied with his obligations under the *SRO*.  As a result, on November 18, 2024, I sent a letter to Buggs' counsel informing them that I would be filing my Motion for Show Cause Hearing to hold Buggs in civil contempt ("Show Cause Motion"). A true and correct copy of that letter is attached hereto as **Exhibit A-3**.

7.     The receivership estate has or will have incurred fees of $11,083.40, in reasonable attorney's fees and expenses to obtain Buggs' compliance with the *SRO*. Specifically:

   a.   My time at a rate of $395 per hour for a total of $3,555.00. This amount consists of: 4 hours spent preparing letters to Buggs' counsel, conferring with my attorney, Peter Lewis, regarding Buggs' violations of the SRO, revising and finalizing the Show Cause Motion; and 5 hours that I anticipate spending to prepare for a show cause hearing and attend the hearing.

   b.   My attorney, Peter Lewis' time at a rate of $550 per hour for a total of $1,650. Peter Lewis spent 3 hours to date writing several emails and conducting telephone conferences with Buggs' counsel as well as conferences with me regarding Buggs' numerous violations of the *SRO*.

   c.   My attorney, Haley Jones' time at a rate of $300 per hour for a total of $3,000.00. Haley Jones spent 8.6 hours preparing a draft of the Show Cause Motion for my review; 0.4 hours preparing a draft of the proposed Order for

3

the Show Cause Motion; and 1 hour preparing a draft of the Receiver's Declaration.

d.  My attorney, Melanie Damian's time at a rate of $440 per hour for a total of $2,200.00. I anticipate Ms. Damian will spend 5 hours preparing for the hearing and attending the hearing.

e.  Additionally, the receivership incurred a court reporter fee of $678.40 for the properly noticed deposition, at which Buggs did not appear.

I declare, under penalty of perjury, that the foregoing factual statements are true and correct.

Executed on November 26, 2024, in Dallas, Texas.


*/s/Kelly M. Crawford*
KELLY M. CRAWFORD
RECEIVER

# Kelly Crawford
## Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4213
kelly.crawford@solidcounsel.com

October 23, 2024

***Via Electronic Mail***
cmoulton@moultonwilson.com

Cindy Levin Moulton
MOULTON & WILSON, LLP
121 N. Post Oak Lane, #401
Houston, Texas 77024

RE:   *Commodity Futures Trading Commission v. Trader's Domain FX Ltd., d/b/a The Traders Domain, et al.;* Case No. 24-cv-23745-ALTMAN; pending in the United States District Court for the Southern District of Florida (the "Lawsuit")

Dear Ms. Moulton:

It is my understanding you are counsel for the Defendant Holton Buggs, Jr. ("Mr. Buggs") in the above referenced Lawsuit. Please find attached the *"Sealed Order Granting Plaintiff's Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief"* (the "SRO"). Pursuant to the SRO, the Court appointed me as the Receiver of the assets of the Defendants and the affiliates and subsidiaries owned or controlled by the Defendants (the "Receivership Defendants"). *See* SRO, ¶29.

By this letter I am requesting your client(s) to comply with the SRO and, to:

1.  Within 24 hours, deliver to me a detailed and complete schedule of all passwords and identification numbers for all websites, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm controlled or operated by your client or in to which your client has access in connection with your client's business activities and business and personal finances, as described in paragraph 32 of the SRO. If your client is not producing the information because of your client's assertion of the Fifth Amendment, please let me know within 24 hours of your receipt of this letter and the SRO.



EXHIBIT
A-1

2.  Within 24 hours, deliver to me a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by your client(s) in connection with their business activities and business and personal finances, as described in paragraph 33 of the SRO. If your client is not producing the information because of your client's assertion of the Fifth Amendment, please let me know within 24 hours of your receipt of this letter and the SRO.

3.  Within five (5) business days, turnover to me a detailed accounting of all assets held by your client and the location of all records of the Receivership Estate, as described in paragraph 31a of the SRO. If your client is not producing the information because of your client's assertion of the Fifth Amendment, please let me know within five (5) business days of your receipt of this letter and the SRO.

4.  Within five (5) business days, turnover to me all records and assets (other than real property) located outside of the United States held by your client, as described in paragraph 31b of the SRO. If your client is not turning over to me the records and assets because of your client's assertion of the Fifth Amendment, please let me know within five (5) business days of your receipt of this letter and the SRO.

5.  Within five (5) business days, provide me access to all records of accounts or assets of your client held by financial or brokerage institutions by signing any necessary consent forms, as described in paragraph 31c of the SRO. If your client is not providing me this access because of your client's assertion of the Fifth Amendment, please let me know within five (5) business days of your receipt of this letter and the SRO.

6.  Within ten (10) business days, deliver to me the following:

    a.  Possession and custody of all assets of your client(s), including assets beneficially owned or otherwise, as described in paragraph 34a of the SRO.

    b.  Possession and custody of all records of your client(s) in connection with their business activities and business and personal finances, as described in paragraph 34b of the SRO.

    c.  Possession and custody of all assets belonging to members of the public now held by your client(s), as described in paragraph 34c of the SRO.

d.  All keys, passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of your client related to their business activities and business and personal finances, as described in paragraph 34d of the SRO.

e.  All information identifying the accounts, employees, and properties or other assets or obligations of your client, as described in paragraph 34e of the SRO.

If your client is not delivering to me any of the foregoing because of your client's assertion of the Fifth Amendment, please let me know within ten (10) business days of your receipt of this letter and the SRO.

In providing the information to me as ordered in the SRO, and pursuant to the order to cooperate with me as set forth in paragraph 35 of the SRO, please advise me of 1) any pending litigation against your client(s); 2) any pending litigation by your client(s); 3) any password required for me to access any computer or electronic files in any medium, which includes any cryptocurrency wallet in which your client(s) have an interest; and (4) advise all persons who owe your client(s) monies that the debts should be paid directly to me. If your client is refusing to comply with the following because of the assertion of the Fifth Amendment, please let me know immediately.

Finally, in light of the freeze on the Receivership Defendants' assets, as set forth in the SRO, you have an obligation to conduct sufficient due diligence to investigate the source of any retainer you have received from your client(s) to insure the funds are not tainted and are not subject to the SRO freeze on assets.

In *United States v. Planes*, No. 8:18-cv-2726, 2019 WL 9091760, at *3 (M.D. Fla. Nov. 20, 2019), the Florida district court held that where there is an asset freeze, "counsel has a special obligation to conduct an objectively reasonable inquiry into the source of the attorney's fee payment. See *Federal Trade Commission v. Network Services Depot Inc.*, 617 F.3d 1127, 1143-44 (9th Cir. 2010); *Federal Trade Commission v. Assail, Inc.*, 410 F.3d 263, 264 (5th Cir. 2005)("an attorney must audit a client sufficiently as to avoid becoming part of a criminal scheme that includes disposing of ill-gotten gains.)"

Even if counsel is told "the money comes from legitimate sources, attorneys should take whatever further steps or ask whatever further questions may be suggested by the circumstances to satisfy themselves that it is objectively reasonable to believe the answer." *Federal Trade Commission v. Assail Inc., supra*, 410 F.3d at 265, quoting *In re Moffitt, Zwerling & Kemler, P.C.*, 846 F.Supp. 463 (E.D. Va. 1994), affirmed, *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 665 (4th Cir. 1996). "[A]n attorney is not permitted to be willfully ignorant of how his representation is funded." *Federal Trade Commission v. Assail Inc., supra*, 410 F.3d at

October 23, 2024
Page 4

265.    Indeed, the "[f]ailure to make such an inquiry.[can] result in disgorgement of the funds." Id.

Thus, in accordance with the provisions of the SRO referenced above, within ten (10) business days from the date of this letter please provide an accounting of all assets or security interests you or your firm received from the Receivership Defendants or for the benefit of the Receivership Defendants to fund your firm's retainer, if any, or for other purposes. Further, please identify the source of the monies and collateral, copies of any documents evidencing such payments or security agreements, and the due diligence you and your firm conducted to insure the monies or security interests were not subject to the freeze imposed by the SRO.

If you or your firm are in possession of any of the Receivership Defendants' Assets, as defined under the SRO, they are to be immediately turned over to the receivership pursuant to the SRO.

Thank you for your prompt attention to these matters.  I am also available to discuss your client's compliance with the SRO.

Sincerely,

Kelly M. Crawford
Receiver

KC/lt
Enclosure

cc:    Alison Wilson, CFTC
       Sean Hennessy, CFTC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23745-ALTMAN

COMMODITY FUTURES
TRADING COMMISSION,

  *Plaintiff,*

*v.*

TRADERS DOMAIN FX LTD. *d/b/a*
THE TRADERS DOMAIN, *et al.,*

  *Defendants.*

_____/

### SEALED ORDER GRANTING PLAINTIFF'S EXPEDITED MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF A TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF

The Plaintiff, the Commodity Futures Trading Commission ("Commission") has filed a Complaint for Injunctive Relief, Civil Monetary Penalties, Restitution, and Other Equitable Relief [ECF No. 1] and moved, pursuant to 7 U.S.C. § 13a-1(a) of the Commodity Exchange Act ("Act"), for an *ex parte* Statutory Restraining Order freezing assets, allowing inspection of records, appointing a Temporary Receiver, and granting expedited discovery, [ECF No. 5]. We have considered the pleadings, declarations, exhibits, and memorandum filed in support of the Commission's motion, and find as follows:

1.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). 7 U.S.C. § 13a-1(a) authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to

1

engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

2. Venue lies properly within this District pursuant to 7 U.S.C. § 13a-1(e).

3. The Commission has made a proper *prima facie* showing that from at least at least November 2019 through present (the "Relevant Period"), Traders Domain FX LTD. d/b/a/ The Traders Domain, by and through its officers, employees, and agents, ("TD") and its co-owners Frederick Teddy Joseph Safranko a/k/a/ Ted Safranko ("Safranko") and David Negus-Romvari ("Negus-Romvari"), individually and as controlling persons of TD (collectively, the "TD Defendants") orchestrated a multi-layered scheme to solicit funds for the purpose of trading leveraged or margined retail commodity transactions, specifically gold-to-U.S. dollar pairs ("XAU/USD"), as well as assorted other commodities, through pooled and individual accounts. Many, if not all, of the offered leveraged or margined transactions were transactions described in Section 2(c)(2)(D) of the Act, 7 U.S.C. §2(c)(2)(D) ("leveraged or margined retail commodity transactions"). Not only did the TD Defendants directly solicit customers, the vast majority of whom lived in the U.S., but they also engaged other individuals and entities ("sponsors") to solicit U.S. customers on TD's behalf—with each sponsor acting like a spoke extending from the TD hub. During the Relevant Period, the TD Defendants began soliciting individuals and/or entities ("customers") to deposit funds for the purpose of trading XAU/USD and other commodities on a leveraged or margined basis through various account offerings. Starting in January 2021 and continuing thereafter, the TD Defendants also solicited customers for the specific purpose of participating in commodity pool operated by TD (the "TD Pool"). The TD Defendants committed fraud by knowingly or with reckless disregard making oral and written fraudulent and material misrepresentations and omissions, including through the TD website, thetradersdomain.com, on social media, via text messages, email,

2

newsletters, and/or in person in order to persuade potential and existing customers to transfer funds for the purpose of trading XAU/USD either through TD's various account offerings or via the TD Pool. TD misappropriated customer funds by accepting customer money via third party bank accounts, payment processors, and crypto wallets, but failing to use at least some of those funds to trade XAU/USD and by charging commissions on purported trading profits that did not exist. In addition, TD, and later it's successor in interest Ares Global d/b/a/ Trubluefx ("Trubluefx"), misappropriated customer funds by failing to return customer funds despite repeated attempts by thousands of customers to access and/or liquidate their accounts. TD and Safranko also falsified trading records and the TD Defendants failed to register as required under the Act. In an effort to expand the scope of the fraud, the TD Defendants recruited entities and individuals to act as sponsors and solicit new customers in exchange for a percentage of purported trading profits in a manner akin to a multi-level marketing ("MLM") scheme. In addition to the many sponsors spread all over the United States and internationally, the TD Defendants recruited the "Sponsor Defendants" (collectively with the TD Defendants and Trubluefx, "Defendants"), four distinct groups named in the complaint which drove the largest number of customers and funds to the TD Pool: (i) Algo Capital LLC ("Algo Capital") and Algo FX Capital Advisor, LLC ("Algo FX"), now known as Quant5 Advisor, LLC, by and through their officers, employees, and agents (collectively, "Algo"), Robert Collazo, Jr. ("Collazo"), Juan Herman ("Herman"), John Fortini ("Fortini"), and Stephen Likos (Likos) (collectively, the "Algo Defendants"); (ii) Michael Shannon Sims ("Sims"); (iii) Holton Buggs ("Buggs"); and (iv) Centurion Capital Group, Inc., by and through its officers, employees, and agents ("Centurion"), Alejandro Santiestaban a/k/a Alex Santi ("Santi"), Gabriel Beltran ("Beltran"), and Archie Rice ("Rice") (collectively, the "Centurion Defendants"). Each group of Sponsor Defendants engaged in a separate

fraudulent scheme to solicit customers for the purpose of trading leveraged or margined XAU/USD. Although the Sponsor Defendants each intended the funds they solicited from customers to be traded in the TD Pool, at least some Sponsor Defendants purported to be soliciting for their own pools or "hedge funds." The Sponsor Defendants solicited funds for the TD Pool even though each knew or should have known that TD was not trading the funds as represented. Each of the Sponsor Defendants became aware of red flags that put them on notice that TD was not a legitimate trading operation. The Sponsor Defendants faced a choice: cease promoting TD in light of the alarming information they knew or follow the strong financial motivations they had to ignore the red flags and continue to collect generous commissions on the purported trading. Each of the Sponsor Defendants chose the latter. The Sponsor Defendants actively downplayed the red flags and continued to solicit customers, helping to create the false impression that customers were participating in legitimate trading even as the scheme was on the brink of collapse. Each of Sponsor Defendants knowingly made oral and written fraudulent and material misrepresentations and omissions on social media, via text messages, by telephone, and in person to potential and existing customers that they knew or should have known were false. The Sponsor Defendants misappropriated customer funds, including by accepting funds intended for trading into bank accounts they controlled and/or collecting commissions on customer profits despite that the Sponsor Defendants knew or should have known that TD was not trading the funds as purported. Some of the Sponsor Defendants also commingled customer funds and most were not registered as required under the Act. In the fall of 2022, the scheme began to unravel, and customers began to experience extreme withdrawal delays and/or were unable to withdraw their funds. To persuade customers that the withdrawal issues were not an indication of fraud, the TD Defendants provided numerous, conflicting excuses for the delays—including, in June

2023, announcing that TD had been acquired by Trubluefx. The TD Defendants falsely assured customers that their funds were safe and withdrawals would be processed. Notwithstanding the significant withdrawal delays, the Sponsor Defendants ignored or downplayed the withdrawal issues and continued to solicit funds from new and existing customers to be traded in the TD Pool. These misstatements allowed Defendants to continue their fraudulent scheme for more than six months and bilk customers out of millions of additional dollars. Each defendant knowingly or with reckless disregard for the truth engaged in this fraudulent conduct.

4. Therefore, there is good cause to believe that Defendants have engaged in, are engaging in, or are about to engage in acts and practices in violation of the Act, 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6k(2), 6m(1), and 6o(1)(A)-(B), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 4.20(a)(1), (b)–(c) (2023).

5. There is also good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary or other redress will occur through the withdrawal, transfer, removal, dissipation or other disposition of funds, assets or other property ("assets") and/or the destruction, alteration or disposition of books and records and other documents ("records") by Defendants, unless Defendants are immediately restrained and enjoined by Order of the Court.

6. Therefore, there is good cause for the Court to freeze assets owned, controlled, managed or held by Defendants or in which they have any beneficial interest.

7. There is also good cause for the Court to prohibit Defendants from destroying, altering or disposing of records, and/or denying representatives of the Commission access to inspect records, when and as requested, to ensure that Commission representatives have immediate and complete access to those records.

8.  There is also good cause for the appointment of a Temporary Receiver to take control of all assets owned, controlled, managed or held by Defendants, or in which they have any beneficial interest ("Defendants' Assets"), so that the Temporary Receiver may preserve assets, investigate and determine customer claims, determine unlawful proceeds retained by Defendants and amounts due to customers as a results of Defendants' alleged violations, and distribute remaining funds under the Court's supervision.

9.  There is also good cause to require an accounting by Defendants to the Temporary Receiver to determine the location and disposition of customer funds and ill-gotten gains.

10. There is also good cause to order repatriation of assets controlled by Defendants so that such assets can be controlled by the Temporary Receiver and to assure payment of restitution and disgorgement as authorized by the Court.

11. There is also good cause to remove the prohibition on early discovery to enable the Commission to determine the full extent of Defendants' wrongdoing (including, but not limited to, the possible involvement of others); to locate other customers; to identify and assess Defendants' entitlement to funds, assets and other property; and to clarify the sources of funds, assets, and other property in advance of a hearing to show cause as to why a preliminary injunction should not issue.

12. In the alternative, for the all the reasons listed above and for the reasons we stated on the record during our October 2, 2024, hearing, *see* Sealed Minute Order [ECF No. 9], we find that the issuance of a statutory restraining order and appointment of a temporary receiver under 7 U.S.C. § 13a-1(a) is appropriate because the Commission has satisfied all four elements of the traditional test for issuing temporary restraining orders and permanent injunctions. *See Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1023, 1034–35 (11th Cir. 2001) (holding that an injunction may be granted where "(a) there is a substantial likelihood of success on the merits;

(b) the TRO or preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and (d) the TRO or preliminary injunction would not be averse to the public interest.").

13. In summary, this is a proper case for granting a restraining order *ex parte* freezing assets, allowing inspection of records, appointing a temporary receiver, and granting expedited discovery because the Commission is likely to succeed on the merits. Moreover, there is a reasonable likelihood that Defendants will transfer or dissipate assets or destroy or alter records. For these reasons, we'll **GRANT** the Commission's Motion for a Statutory Restraining Order [ECF No. 5] and **ORDER and ADJUGE** as follows:

## DEFINITIONS

14. For the purposes of this Order, the following definitions apply:

15. The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

16. The term "records" encompasses "documents" and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34(a), and includes, but is not limited to, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations—stored in any medium from which information can be obtained or translated,

if necessary, into reasonably usable form. The term "records" also refers to each and every such item in Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of the Defendants and; and (ii) all items which Defendants have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. A record also includes the file and folder tabs associated with each original and copy.

17. "Defendants" means and refers to, collectively: Traders Domain FX LTD. d/b/a/ The Traders Domain and any and all of its successors in interest, including, but not limited to, Ares Global d/b/a/ Trubluefx; Ted Safranko; David Negus-Romvari; Algo Capital LLC; Algo FX Capital Advisor, LLC, now known as Quant5 Advisor, LLC; Robert Collazo, Jr.; Juan Herman; John Fortini; Steven Likos; Michael Sims; Holton Buggs, Jr.; Centurion Capital Group, Inc.; Alex Santi; Gabriel Beltran; and Archie Rice.

## RELIEF GRANTED

### I.     Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets

18. Defendants are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating or otherwise disposing of any assets, wherever located, including Defendants' assets held outside the United States, excepts as provided otherwise in Sections IV, V, and VI of this Order, or as otherwise ordered by the Court;

19. Notwithstanding the provisions of this Section I, at the request of the Temporary Receiver, Defendants and any other person who has possession, custody, or control of any of Defendants' funds, assets, or property shall transfer possession of all assets subject to this Order to the Temporary Receiver in accordance with Section IV, V, and VI of this Order.

20.   The assets affected by this Order shall include existing assets and assets acquired after the effective date of this Order.

**II.   Maintenance of and Access to All Records Relating to the Business Activities and Business and Personal Finances**

21.   Defendants are restrained from directly or indirectly destroying, altering, or disposing of, in any manner any records that relate or refer to the business activities or business or personal finances of any Defendants.

22.   Representatives of the Commission shall be immediately allowed to inspect any records that, in part or in whole, contain, relate, or refer to the business activities or business or personal finances of the Defendants, including, but not limited to, both hard-copy documents and electronically stored information, wherever they may be situated and whether they are in the possession of the Defendants or others.  To ensure preservation and facilitate meaningful inspection and review of these records, Defendants shall allow representatives of the Commission to make copies of these records, including complete forensic images of any devices containing any such records, and if on-site copying of these records and/or forensic imaging of these devices is not practicable, representatives may make such copies and/or forensic images off-site.  After any such off-site copying and/or forensic imaging, Plaintiff shall promptly return the original documents and devices upon which electronic information is stored.

23.   To further facilitate meaningful inspection and review, Defendants shall, absent a valid assertion of their respective rights against self-incrimination under the Fifth Amendment, promptly provide Commission staff with:

a.   the location of all records relating or referring to the business activities and business and personal finances of the Defendants;

b.    all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) owned, controlled or operated by Defendants, or to which the Defendants have access; and

c.    all passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Defendants in connection with their business activities and business and personal finances.

24.    When inspecting and reviewing records and/or contents of forensic images that are subject to this Order, including those contained on computers and/or other devices, the Commission should undertake reasonable measures to prevent review of the Defendants' privileged communications and/or other nonbusiness, nonfinancial materials by the Commission's attorneys and other staff who are part of the litigation team in this matter. Moreover, Defendants (or their counsel) shall promptly contact Plaintiff's counsel to assert any claims of privilege or other legal objections relating to the inspection and review of any records or contents of forensic images that are subject to this Order and promptly cooperate with Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other nonbusiness, nonfinancial materials to the Commission's attorneys and other staff who are part of the litigation team in this matter. However, nothing herein shall excuse Defendants from full and immediate compliance with this Court's Order permitting Plaintiff to inspect and review the records and contents of forensic images which relate to Defendants' business activities and their business and personal finances.

III.     Notice to Financial Institutions and Others that Hold or Control Assets or Records

25.     To ensure the effectiveness of the asset freeze and pending further order of this Court, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset or other property of Defendants shall not, in active concert or participation with Defendants, permit Defendants or other persons to withdraw, transfer, remove, dissipate, or otherwise dispose of any of Defendants' assets, except as directed by further order of the Court.

26.     Any financial or brokerage institution, business entity, or person that receives notice of this Order by personal service or otherwise shall not, in active concert or participation with any Defendant, directly or indirectly destroy, alter, or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant.

27.     Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendants, or has held, controlled, or maintained custody of any such account or asset of any Defendants at any time since November 1, 2019, shall not, in active concert or participation with Defendants, deny a request by the Commission to inspect all records pertaining to every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the Commission.

28. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order shall:

    a. Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

    b. Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Defendants' funds at the Temporary Receiver's direction, and producing records related to business activities or business or personal finances of Defendants to the Temporary Receiver.

## IV. Order Appointing Temporary Receiver

29. Kelly Crawford, Esq., is appointed Temporary Receiver, with the full powers of an equity receiver for Defendants and their affiliates and subsidiaries owned or controlled by Defendants (hereinafter referred to as the "Receivership Defendants"), and all of the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned beneficially or otherwise, by the Receivership Defendants (hereinafter the "Receivership Estate"). The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this order.

30. The Temporary Receiver is directed and authorized to accomplish the following:

a. Assume full control of the Receivership Defendants by removing Defendants Safranko, Negus-Romvari, Collazo, Herman, Fortini, Likos, Sims, Buggs, Santi, Beltran and Rice, and any officer, independent contractor, employee, or agent of the Receivership Defendants, from control and management of the affairs of the Receivership Defendants as the Temporary Receiver deems appropriate;

b. Take exclusive custody, control and possession of the Receivership Estate, which includes but is not limited to complete authority to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, money, effects, land, leases, books, records, work papers, and records of accounts, including electronically-stored information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records of the Receivership Defendants and customers or clients of any of the Receivership Defendants' business activities whose interests are now held by, or under the direction, possession, custody or control of, the Receivership Defendants;

c. Take all steps necessary to secure the business and other premises under the control of the Receivership Defendants;

d. Perform all acts necessary, including the suspension of operations to conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent an irreparable loss, damage, or injury to any customers or clients of any of Receivership Defendants' business activities;

e. Prevent the withdrawal or misapplication of assets entrusted to the Receivership Defendants, and otherwise protect the interests of any customers or clients of any of Receivership Defendants' business activities;

13

f.  Manage and administer the Receivership Defendants and the Receivership Estate by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel, suspending operations, and/or entering into agreements, including but not limited to: (1) the retention and employment of investigators, attorneys or accountants, appraisers, and other independent contractors and technical specialists of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver; and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants;

g.  Collect all funds owed to the Receivership Defendants;

h.  Initiate, defend, compromise adjust, intervene, dispose of, or become a party to, any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

i.  Issue subpoenas to obtain records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

j.  Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

k.  Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Temporary Receiver shall apply to the Court for prior

approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order except for payments that the Temporary Receiver deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss; and

l.    Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the Commission for inspection; and, within sixty days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by this Order.

## V.    Accounting and Transfer of Fund and Records to the Temporary Receiver

31. Absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, each Defendant shall, within five business days following the service of this Order:

a.    Provide the Temporary Receiver with a full detailed accounting of all assets, including the assets inside and outside of the United States that are held by each and every Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly, and the location of all records of the Receivership Estate.

b.    Transfer to the territory of the United States and deliver to the possession, custody, and control of the Temporary Receiver, all records and assets (other than real property) located outside of the United States that are held by each and every Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly.

    c.  Provide the Temporary Receiver access to all records of accounts or assets of the Defendants held by financial or brokerage institutions located within or outside the territorial United States by signing any necessary consent forms.

32. Absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants shall, within twenty-four hours of the issuance of this Order cause to be prepared and delivered to the Temporary Receiver a detailed and complete schedule of all passwords and identification (ID) numbers for all websites, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which any of the Defendants have access in connection with their business activities and business and personal finances.

33. Absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants shall, within twenty-four hours of the issuance of this Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Defendants in connection with their business activities and business and personal finances. The schedules required by this section shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer and/or mobile device, and all passwords necessary to access and use the software contained on the computer and/or mobile device.

## VI. Turning Over Assets and Records to the Temporary Receiver

34. Upon service of this Order, and absent a valid assertion by Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants and any other person or

entity served with a copy of this Order, shall immediately or within such time as permitted by
the Temporary Receiver in writing, deliver over to the Temporary Receiver:

    a. Possession and custody of all assets of the Receivership Defendants, wherever
situated, including those owned beneficially or otherwise;

    b. Possession and custody of records of the Receivership Defendants in connection with
their business activities and business and personal finances, including but not limited
to, all records of accounts, all financial and accounting records, balance sheets, income
statements, bank records (including monthly statements, canceled checks, records of
wire transfers, and check registers), client lists, title documents and other Receivership
Defendants;

    c. Possession and custody of all assets belonging to members of the public now held by
the Receivership Defendants;

    d. All keys, passwords, entry codes, and combinations to locks necessary to gain or to
secure access to any of the assets or records of the Receivership Defendants related to
their business activities and business and personal finances, including, but not limited
to, access to the Receivership Defendants' business premises, means of
communication, accounts, computer systems, mobile electronic devices, or other
property; and

    e. Information identifying the accounts, employees, and properties or other assets or
obligations of the Receivership Defendants.

## VII.   Directive To Cooperate with Temporary Receiver

35.   Absent a valid assertion of their respective rights against self-incrimination under the Fifth
Amendment, Defendants, and all other persons or entities served with a copy of this order shall
cooperate fully with and assist with the Temporary Receiver. This cooperation and assistance

shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Temporary Receiver under this Order, and advising all persons who owe debts to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver.

## VIII.  Stay on Actions Against the Receivership Defendants

36.  Except by leave of the Court, during the pendency of the receivership ordered herein, the Defendants and all other persons and entities shall be and hereby are stayed from taking any action (other than the present action by the Commission) to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, the Temporary Receiver, the Receivership Estate, or the Temporary Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

   a.  Petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendants to be placed in bankruptcy;

   b.  Commencing, prosecuting, litigating, or enforcing any suit or proceeding against any of the Receivership Defendants, or any of their subsidiaries or affiliates, except that such actions may be filed to toll any applicable statute of limitations;

   c.  Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of any of the Receivership Defendants, or any of their subsidiaries, or affiliates;

   d.  Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Receivership Defendants, or any of their subsidiaries or affiliates or

any property claimed by any of them, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Defendants' interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

e. Using self-help or executing or issuing, or causing the execution or issuance of, any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Defendants, or any of their subsidiaries or affiliates, or the Temporary Receiver, or any agent of the Temporary Receiver; and

f. Doing any act or thing whatsoever to interfere with the Temporary Receiver taking control, possession, or management of the property subject to the receivership, or to in any way interfere with the Temporary Receiver or to harass or interfere with the duties of the Temporary Receiver; or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or their subsidiaries or affiliates.

Provided, however, that nothing in this section shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Defendants.

## IX. Compensation for Temporary Receiver and Personnel Hired by the Temporary Receiver

37. The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when

rendered were: (1) reasonably likely to benefit the receivership estate; or (2) necessary to the administration of the estate. However, the Temporary Receiver and any personnel hired by the Temporary Receiver shall not be compensated or reimbursed by, or otherwise be entitled to, any funds from the Court or the Commission. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty days after the date of this Order and subsequent requests filed quarterly thereafter. The requests for compensation shall itemize the time and nature of services rendered by the Temporary Receiver and all personnel hired by the Temporary Receiver.

**X.    Persons Bound By this Order**

38.    This Order is binding on any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of the Defendants, or is in active concert or participation with the Defendants.

**XI.    Bond Not Required of Plaintiff or the Temporary Receiver**

39.    As Plaintiff Commission has made a proper showing under 7 U.S.C. § 13a-1(b), it is not required to post any bond in connection with this Order. The Temporary Receiver is similarly not required to post bond.

**XII.    Service of Order and Assistance of United States Marshals Service and/or Other Law Enforcement Personnel**

40.    Copies of this Order may be served by any means, including via email or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of any Defendants or that may be subject to any provision of this Order.

41.    Alison B. Wilson, Kelly Folks, Sean Hennessy, Sarah M. Wastler, Maura M. Viehmeyer and

representatives of the United States Marshals Service are specially appointed by the Court to effect service.

42. The United States Marshals Service is authorized to: a) accompany and assist the Commission representatives in the service and execution of the Summons, Complaint and this Order on the Defendants, and b) help maintain lawful order while Commission representatives inspect records as provided in this Order.

## XIII. Service on the Commission

43. Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court for the Southern District of Florida and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by delivering a copy to **Alison B. Wilson, Chief Trial Attorney, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, D.C. 20581,** by electronic filing, e-mail, personal delivery, or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay resulting from heightened security and decontamination procedures applicable to the Commission's regular mail.

## XIV. Further Proceedings

44. Good cause having been shown and the burden for issuing a preliminary injunction having been met by the Commission, this Court hereby orders Defendants to show cause why a Preliminary Injunction should not issue. The Order to Show Cause is set for hearing for **October 29, 2024,** at **2:00 p.m.** in **Courtroom 12-4** at the United States Courthouse for the Southern District of Florida, 400 N. Miami Ave, Miami, FL 33128. Should any party wish to file a memorandum of law or other papers concerning the issuance of a preliminary injunction against the Defendants, such materials shall be filed, served, and received by all parties at least two full days before the hearing ordered above.

45.    Plaintiff's request for expedited discovery is also granted.  In advance of the hearing to show

cause as to why a preliminary injunction should not issue, the parties may conduct expedited

discovery, and the prohibition upon discovery before the early meeting of counsel pursuant to

Rule 26(f), in accordance with Rule 26(d), is removed.  Depositions of parties and non-parties

may be taken subject to two calendar days' notice pursuant to Rule 30(a) and 45, that notice may

be given personally, by facsimile, or by electronic mail, and, if necessary, any deposition may be

taken remotely.

**XV.    Force and Effect**

46.    This Order shall remain in full force and effect until **October 29, 2024,** unless extended further

by order of this Court by order of this Court. This Court retains jurisdiction of this matter for

all purposes.

    **DONE AND ORDERED** in the Southern District of Florida on October 3, 2024.

 

 

 

                                          _____

                                          ROY K. ALTMAN

                                          UNITED STATES DISTRICT JUDGE

**Kelly Crawford**

| | |
|---|---|
| **From:** | Peter Lewis |
| **Sent:** | Thursday, November 14, 2024 3:40 PM |
| **To:** | Kelly Crawford |
| **Subject:** | Fw: Follow Up to Your Inspection of Holton Buggs' Residence |

FYI

**Peter Lewis** PARTNER
**Scheef & Stone, LLP**
**www.solidcounsel.com | 214.706.4241**
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Cohen, Barak (Perkins Coie) <BCohen@perkinscoie.com>
**Sent:** Thursday, November 14, 2024 1:19 PM
**To:** Peter Lewis <Peter.Lewis@solidcounsel.com>; Kyle Coker <kyle@farmercoker.com>
**Cc:** Kaitlyn Coker <kaitlyn@farmercoker.com>; Estes, Benjamin (Perkins Coie) <BEstes@perkinscoie.com>
**Subject:** RE: Follow Up to Your Inspection of Holton Buggs' Residence

**CAUTION:** EXTERNAL EMAIL
Hi Peter,

I hope you're doing well. It doesn't make sense to schedule a deposition for a date certain since key motions are still pending before the Court (a motion to dismiss the CFTC's suit against Mr. Buggs and a motion to dissolve the Receivership that exists only because of the suit). That said, we're fine flagging December 4 for a potential deposition date, and we can revisit the precise timing as we get closer to the preliminary date. Happy to jump on a call to discuss this if you'd like.

Best,

Barak



**Barak Cohen**
PARTNER
**Perkins Coie**
700 Thirteenth Street, N.W. Suite 800
Washington, DC 20005-3960
+1.202.654.6337
bcohen@perkinscoie.com

**From:** Peter Lewis <Peter.Lewis@solidcounsel.com>
**Sent:** Wednesday, November 13, 2024 3:38 PM
**To:** Kyle Coker <kyle@farmercoker.com>
**Cc:** Cohen, Barak (WDC) <BCohen@perkinscoie.com>; Kaitlyn Coker <kaitlyn@farmercoker.com>
**Subject:** RE: Follow Up to Your Inspection of Holton Buggs' Residence

Kyle,

For the record, this is the first I have heard from you that Mr. Buggs intends not to appear for his deposition as noticed, or that the date of the deposition did not work.  In addition,  a timely motion to quash was not filed for Mr. Buggs.  Accordingly, the Receiver intends to proceed with the deposition tomorrow as noticed, and make a certificate of non-appearance if merited, unless you agree today to produce Mr. Buggs for an asset deposition on any one of the following dates:

November 27
December 2, 3, or 4th.

The Receiver will not agree to a continuance of his deposition unless a new date for the deposition on one of the days listed above is confirmed by you before 5:00 p.m. so that the Receiver has sufficient time to inform the parties and the court reporter of the continued deposition.

Best,

Peter

**Peter Lewis** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | 214.706.4241
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201

   

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are

hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Kyle Coker <kyle@farmercoker.com>
**Sent:** Wednesday, November 13, 2024 1:58 PM
**To:** Peter Lewis <Peter.Lewis@solidcounsel.com>
**Cc:** Barak Cohen <bcohen@perkinscoie.com>; Kaitlyn Coker <kaitlyn@farmercoker.com>
**Subject:** Re: Follow Up to Your Inspection of Holton Buggs' Residence

CAUTION: EXTERNAL EMAIL
Peter,

Mr. Buggs will not be available for such deposition. After your notice and the property inspection, I was under the impression that you were going to work with us on an agreeable date and determine if a deposition was even necessary, after speaking with Kelly. I apologize for not confirming in writing with you after we got back from Houston and you were able to speak to Kelly.

How would you prefer to proceed?

-Kyle

**From:** Peter Lewis <Peter.Lewis@solidcounsel.com>
**Date:** Wednesday, November 13, 2024 at 13:33
**To:** Kyle Coker <kyle@farmercoker.com>
**Subject:** RE: Follow Up to Your Inspection of Holton Buggs' Residence

Hi Kyle: I want to confirm that Mr. Buggs will be appearing for his asset deposition with the Receiver tomorrow morning at 10 a.m. CST, as noticed. Please let me know. Thanks!

Best,
Peter

**Peter Lewis** PARTNER
Scheef & Stone, LLP

3

www.solidcounsel.com | 214.706.4241
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201

   

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Peter Lewis
**Sent:** Monday, November 11, 2024 2:02 PM
**To:** Kyle Coker <kyle@farmercoker.com>
**Subject:** RE: Follow Up to Your Inspection of Holton Buggs' Residence

Kyle- many thanks for your email and please note as follows:

1. I am glad we were able to get the initial inspection issues resolved Thursday in such a way as to allow Shirley and me the ability to proceed forward with Thursday's inspection.
2. I have been tied up on other matters and will endeavor to follow up in more detail regarding our assessment of what we saw.
3. Below is the remote log-in information for Mr. Buggs' deposition this Thursday, at 10:00 a.m. CST.  Please let me know if you have any questions regarding this log-in information or the logistics of the deposition.
4. As you know, pursuant to paragraph 31a of the Statutory Restraining Order ("SRO"), Mr. Buggs is required to provide the Receiver with a full detailed accounting of all assets.
5. To date, Mr. Buggs has not provided this accounting and as ***such he is in violation of the SRO***.
6. It is imperative that Mr. Buggs produce the accounting by no later than 5:00 p.m. CST on Tuesday, November 12, 2024, so that the Receiver has adequate time to review the accounting in preparation for Mr. Buggs' deposition on Thursday, November 14, 2024.
7. Let me know if you have any questions!
8. Thanks!

**Peter Lewis** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | 214.706.4241
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201

   

**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Kyle Coker <kyle@farmercoker.com>
**Sent:** Thursday, November 07, 2024 2:42 PM
**To:** Peter Lewis <Peter.Lewis@solidcounsel.com>
**Subject:** Re: Follow Up to Your Inspection of Holton Buggs' Residence

CAUTION: EXTERNAL EMAIL

Peter,

I wanted to express to you how much I appreciated our overall interaction today. I also wanted to know that I will respect how you'd prefer our communications related to specific matters to be initially presented via email to ensure accuracy and avoid misunderstandings.

The fact that we were able to resolve our initial differences for purposes of today's inspection, reinforced my belief that we will be successful in addressing the myriad of inevitable myriad of differences that our respective representations will present. From our initial discussion, I've expressed my desire to work with you in a cooperative, direct, and productive manner. After today, I feel confident that you value those sentiments as well, and that is unfortunately not often the approach taken in our industry.

Right now, I'm working on two things: (1) a summary of issues and my thoughts on how to address them in a way that takes both sides' concerns into account; and (2)  providing you the information that you have sought in a timely manner once we receive - and are able to review - prior counsel's files. I am optimistic that by the time I'm back in the office tomorrow, we'll have received such files. I would welcome any guidance on what would be most helpful to you for Barak and I to prioritize.

Best,

-Kyle

Get Outlook for Android

NOTICE: This communication from Perkins Coie LLP may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

**Kelly Crawford**
Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4213
kelly.crawford@solidcounsel.com

November 18, 2024

*Via Electronic Mail*
mdescalzo@tachebronis.com
BCohen@perkinscoie.com
kyle@farmercoker.com

**Marissel Descalzo**
TACHE, BRONIS, CHRISTIANSON AND
DESCALZO, P.A.
150 S.E. Second Ave.
Suite 600
Miami, FL 33131
305-537-9565
305-537-9567 (fax)
mdescalzo@tachebronis.com

**Barak Cohen**
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, DC  20005-3960
202-654-6337
BCohen@perkinscoie.com

**Kyle Austin Coker**
FARMER & COKER, PLLC
*901 Main Street, Suite 5330*
*Dallas, TX 75202*
kyle@farmercoker.com

RE:     *Commodity Futures Trading Commission v. Trader's Domain FX Ltd., d/b/a The Traders Domain, et al.;* Case No. 24-cv-23745-ALTMAN; pending in the United States District Court for the Southern District of Florida (the "Lawsuit")



Dear Counsel:

Your client Holton Buggs, Jr. ("Mr. Buggs") continues to be in violation of numerous provisions of the Court's "*Sealed Order Granting Plaintiff's Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief*" (the "SRO"). Specifically,

a. Mr. Buggs failed to provide the Receiver with "a full detailed accounting of all assets" held by Defendant Buggs. He is in violation of **SRO Paragraph 31A**.

b. Mr. Buggs failed to provide the Receiver with "a detailed and complete schedule of all passwords and identification (ID) numbers for all website, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any ban, financial institution, or brokerage firm" controlled or operated by Defendant Buggs or to which Defendant Buggs has access. He is in violation of **SRO Paragraph 32**.

c. Mr. Buggs failed to provide the Receiver with "a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Defendant Buggs in connection with his business activities and business and personal finances. He is in violation of **SRO Paragraph 33**.

d. Mr. Buggs failed to turn over possession and custody of Defendant Buggs' records in connection with his business activities and business and personal finances. This includes the records regarding his investments in Traders Domain and his receipt of any compensation individually or through entities he owns or controls of compensation related to Traders Domain. He is in violation of **SRO Paragraph 34(b)**

Simply because you filed a motion to dissolve the receivership or are contesting jurisdiction does not excuse Mr. Buggs from complying with the terms of the SRO. In addition, the agreement to produce Mr. Buggs for an asset deposition on 12/4/24[1] does not negate or replace Mr. Buggs' obligations under the SRO.

Furthermore, you have an obligation under the law to identify the source of the retainer you and the other counsel for Mr. Buggs have received. *United States v. Planes*, No. 8:18-cv-2726, 2019 WL 9091760, at *3 (M.D. Fla. Nov. 20, 2019)("counsel has a special obligation to conduct an objectively reasonable inquiry into the source of the attorney's fee payment.");

---

[1] Your agreement to produce Mr. Buggs for a deposition was only made *after* Mr. Buggs failed to appear for his deposition on November 14, 2024.

*Federal Trade Commission v. Network Services Depot Inc.*, 617 F.3d 1127, 1143-44 (9th Cir. 2010); *Federal Trade Commission v. Assail, Inc.*, 410 F.3d 263, 264 (5th Cir. 2005)("an attorney must audit a client sufficiently as to avoid becoming part of a criminal scheme that includes disposing of ill-gotten gains.").   You have ignored my previous request that you provide this information.

In light of the numerous violations of the SRO by Mr. Buggs and your failure to provide information regarding the sources of your retainers as required under the law, I will be filing a show cause motion with the Court.

Sincerely,

Kelly M. Crawford
Receiver

KC/lt
Enclosure

cc:   Alison Wilson, CFTC
      Sean Hennessy, CFTC

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

v.

TRADERS DOMAIN FX LTD. d/b/a
THE TRADERS DOMAIN;
FREDIRICK TEDDY JOSEPH
SAFRANKO a/k/a TED SAFRANKO;
DAVID WILLIAM NEGUS-
ROMVARI; ARES GLOBAL LTD.
d/b/a TRUBLUEFX; ALGO CAPITAL
LLC; ALGO FX CAPITAL ADVISOR
LLC n/k/a QUANT5 ADVISOR, LLC;
ROBERT COLLAZO, JR.; JUAN
HERMAN a/k/a JJ HERMAN; JOHN
FORTINI; STEVEN LIKOS;
MICHAEL SHANNON SIMS;
HOLTON BUGGS, JR; CENTURION
CAPITAL GROUP INC.;
ALEJANDRO SANTIESTABAN a/k/a
ALEX SANTI; GABRIEL BELTRAN;
and ARCHIE RICE,

Defendants.

Civil Case No. 1:24-cv-23745-RKA

## ORDER SETTING SHOW CAUSE HEARING

The Receiver filed a Motion for "Show Cause" Hearing to Hold Defendant Holton Buggs,

Jr. in Civil Contempt and Memorandum of Law in Support [Doc. ___] (the "Motion"). The

Receiver requests the Court to schedule a hearing for Buggs to appear and show cause as to why

he should not be held in civil contempt for his violations of the *Order Granting Plaintiff's*

1

*Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* [Dkt. No. 10]("the SRO").

Having considered the Motion, the Receiver's Declaration and the pleadings on file, the Court grants the Receiver's request for a show cause hearing.

Accordingly, the Court sets a hearing on the Motion for _____,

**at \_:00 \_.m.**, in Courtroom 12-4 of the Wilke D. Ferguson, Jr. Courthouse, 400 North Miami Avenue. The Court **ORDERS** Buggs to appear at the hearing in person and show cause as to why he should not be held in civil contempt of the SRO.

**DONE AND ORDERED** this _____ day of _____, 2024.

_____
ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE

2