UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CV-23745-RKA

COMMODITY FUTURES )
TRADING COMMISSION )
                                  )
    *Plaintiff* )
                                  )
vs. )
                                  )
TRADERS DOMAIN FX LTD. *d/b/a* )
THE TRADER DOMAIN, *et al.*, )
                                  )
    *Defendants*. )
                                  )

**ROBERT COLLAZO'S MOTION TO MODIFY THE *EX PARTE* STATUTORY RESTRAINING ORDER**

FELDMAN FIRM PLLC
150 Southeast 2nd Avenue
Suite 600
Miami, Florida 33131
Direct: 305.714.9474
Email: afeldman@feldmanpllc.com
Office: 305.714.9474
Florida Bar No. 60325
*Attorney for Robert Collazo*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 3

BACKGROUND .................................................................................................................... 5

ARGUMENT .......................................................................................................................... 8

   A.   A Release is Warranted Because the Funds are Untainted and Mrs. Collazo is Legally Entitled to Half the Proceeds from the Sale of the Bimini Property ........................................... 9

      1.   No Less than 1.3 Million Dollars Were Derived from Untainted Assets Unconnected to the Conduct Alleged in the Complaint ...................................................................................... 9

      2.   A Release is Warranted Because Ely Collazo is the Legal Owner of the Bimini Property Under Bahamian Law ................................................................................................ 10

   B.   A Release is Warranted to Pay Attorneys' Fees ................................................................ 11

   C.   A Release is Warranted to Pay the Reinstatement Fee to Salvage the Collazo Homestead and to Pay Other Reasonable Monthly Living Expenses ............................................................ 13

   D.   The Request is Reasonable and Leaves the Receivership with Nearly 2 million Dollars   15

   E.   The Request is Reasonable Because Mr. Collazo Has Removed a Significant Roadblock to Obtaining Foreign Real Property ............................................................................................ 16

   F.   The SRO Must be Modified to Exclude After-Acquired Assets ...................................... 17

CONCLUSION ..................................................................................................................... 18

## INTRODUCTION

Mr Collazo seeks to modify the statutory restraining order (SRO) (Dkt. No. 10) which the CFTC obtained on an *ex parte* basis *and* the Order Authorizing the Sale of Property (Bimini Property). Dkt. No. 43. *See* Fed. R. Civ. P. 65(b)(4). That order states "the proceeds of the sales shall be deposited into the trust account of Assignee Philip J. Von Kahle's counsel, Bast Amron LLP, **to be held in escrow pending further order of this Court** and, as described in the Motion, the court in the Algo Capital ABC." Dkt. No. 43.

Mr. Collazo seeks the release of **$1,067,923.00** from the proceeds of that sale of the Bimini Property and an order directing that Bast Amron LLC to transfer sales proceeds as follows:

- Transfer to Mr. Collazo approximately One Hundred- and Thirteen-thousand and Five Hundred and Sixty-Three dollars (**$113,563.00.00**) (Reinstatement Fee) to preserve Mr. Collazo's Florida homestead located in Miami Lakes, Florida where his three minor children reside with him[1];

- Transfer the Retainer Fee of Four Hundred and Fifty Thousand dollars (**$450,000.00**) to the IOLTA account of Feldman Firm PLLC. A portion of those fees would be used to pay the attorney's fees that Mr. Collazo has incurred as of this filing (***not less than $26,558.00*** excluding any discounts) and the remaining portion would remain in the Firm's IOLTA account and would be earned at the Firm's hourly rates. *Alternatively*, upon receipt of the sales proceeds from the Bimini property, Bast Amron LLC shall deposit (**$450,000.00)** of those funds (Attorney Fees Deposit) into a sub-IOLTA or separate escrow and Feldman Firm PLLC shall be entitled to receive its legal fees from the Attorneys Fee's deposit. The Firm shall submit an application to court for fees every 30 days and Bast Amron shall disburse the amount of fees

---

[1] A final sale of that property is scheduled to occur on December 17, 2024. After having reviewed a copy of this Motion on November 24, 2026, counsel for the Receiver agreed to file a Stay in the foreclosure proceedings in state court which significantly diminishes the concern that the Collazo's and their minor children will be evicted from their home and is a very good first step. **Ex. D (Notice of Stay of Foreclosure Action).** Nevertheless, Mr. Collazo seeks a release of that reinstatement amount to preserve the homestead. As of today, that sale has not been cancelled.

3

authorized by the court to the Firm no later than 2 days after the court's entry of any order authorizing those fees.

- Transfer to Mr. Collazo no more than **$504,360.00** to pre-pay 18 months of the Collazo household's monthly living expenses **($28,020 x 18 = $504,360.00)**. *Alternatively*, upon receipt of the sales proceeds from the Bahamas property, Bast Amron LLC shall deposit **($504,360.00)** of those funds (Reasonable Expenses Deposit) into a sub-IOLTA or separate escrow. Mr. Collazo shall be entitled to receive its reasonable expenses from the Reasonable Expenses Deposit. The Firm shall submit an application to the court for reasonable expenses every 30 days and Bast Amron shall disburse the amount of reasonable expenses authorized by the court to Mr. Collazo no later than 2 days after the court's entry of any order authorizing those expenses.

This request should be granted for several reasons. *First,* while it is not Mr. Collazo's burden to prove the source of the funds, it is indisputable that the source of these funds is entirely unconnected to any of the relevant conduct alleged against Mr. Collazo. *Second*, Ely Collazo (Mr. Collazo's wife) who is not a defendant in this case (or named anywhere in the 100-plus page complaint) is a joint owner of the Bimini property and is legally entitled to half of the proceeds from the sale of the real property in Bimini. *Third,* district courts throughout the United States have exercised their discretion to permit the release of funds in CFTC and SEC cases for the express purposes of paying legal fees and reasonable living expenses even, unlike here, where the frozen funds are derived from a potentially tainted source. *Fourth,* the request leaves nearly 2 Million dollars with the receivership. And, equity dictates that this is a fair and just result when you consider the incredible expenses and administrative burdens that Mr. Collazo has removed from the process of obtaining foreign real property in the Bahamas. That process first includes a judgment, and then a complicated process in the

Bahamas to recognize that judgment since United States judgments are not included in Reciprocal Enforcement of Judgments Act (1924) in the Bahamas. [2]

Finally, Mr. Collazo seeks to remove the restriction in paragraph 20 of the SRO so that the SRO does not apply to property acquired by Mr. Collazo after the effective date of the SRO. Dkt. No. 10

## BACKGROUND

The Complaint alleges that the Relevant Algo Period began in *October of 2021* when Algo Capital migrated its trading strategy from trading foreign currencies (Forex) on the TD Partners trading platform *without* Ted Safranko's involvement or participation to trading AUX/Gold with Safranko's participation in involvement. Dkt. No. 1 at 34, ¶101. By 2023, Collazo incurred life-altering personal losses from this change in trading strategy.

By May of 2024, Mr. Collazo had exhibited extraordinary cooperation. From May of 2023 until September of 2023, Mr. Collazo through predecessor counsel produced Hundreds of Thousands of records to the CFTC, including text messages and videos. By May of 2024, Mr. Collazo produced additional *terrabytes of* records to the receiver counsel Bast Amron LLP in a Florida Assignment for the Benefit of Creditors (ABC) proceeding, *Phillip J. Von Kahle vs. Algo Capital, LLC*, Case NO. 2023-027763-CA-01 (Miami Dade County, Florida). Notably, as part of his cooperation, a representative from Algo Capital was deposed by Bast Amron LLP. In that same proceeding, no later than May of this year, it was agreed that the Bimini Property could be sold and that the proceeds from the sale would be deposited in Bast Amron LLP's escrow account. **Ex. 1** (ABC"). *Id.*

---

[2] See **Ex. E**, Chambers Global Practice 2022, Review of Enforcement of Judgments (Bahamas).

5

Equally as significant, prior to and during the Relevant Algo Period, specifically between late 2020 and July of 2022, Mr. Collazo maintained other companies which were not involved in the trading of foreign currencies or gold and were not subject to the jurisdiction of the CFTC. For example, through his company, Uptime Armory, LLC, which is managed by Bit5Ive,[3] Mr. Collazo completed performance of a contract with ISW Holdings (a Nevada corporation) to locate and identify inexpensive power sources in Georgia and Gaffney, South Carolina. After location of the sites, ISW would then perform mining for cryptocurrencies. The project was time-consuming requiring labor, equipment, and construction.

Below are photos related to that project:



---

[3] **Ex. 2** (Uptime Armory Annual Report)

Press releases from the partnership between Bit5ive and ISW Holdings LLC further illustrate that Bit5ive and ISW Holdings LLC were involved in significant infrastructure projects to locate and identify mining sites for cryptocurrency. [4]

On **August 6, 2021,** prior to the Relevant Algo Period and during the time that Mr. Collazo was working on this infrastructure project, RAV Bahamas Limited conveyed a deed to Mr. Collazo and Ely Collazo for the Bimini Property. [5] And, following completion of that infrastructure project with ISW, Uptime Armory received 2.2 million dollars from ISW Holdings. Mr. Collazo then transferred no less than 1.3 million of the 2.2 million from ISW Holdings to purchase the Bimini Property as set forth below. [6]

*First*, on **August 5, 2022**, ISW Holdings transferred 2.2 million dollars to Uptime Armory LLC's Chase account ending in **1365** for performance of the infrastructure project referenced above.

| DEPOSITS AND ADDITIONS | | |
|---|---|---|
| DATE | DESCRIPTION | AMOUNT |
| 08/05 | Book Transfer Credit B/O: Isw Holdings, Inc Cypress TX 77433-5278 US Ref: Land & Development Georgia Tm: 3358551217Es | $2,200,000.00 |

*Second*, on **August 9, 2024**, Mr Collazo transferred $1,425,000.00 of those funds to his Chase personal account ending in **1013.**

| 08/09 | 08/09 Online Transfer To Chk ...1013 Transaction#: 12350119109 | 1,425,000.00 |
|---|---|---|

---

[4] **Ex. 3** (ISW Holdings LLC Press Releases).

[5] **Ex. 4.** (Collazo Deed). The deed was recorded on June 22, 2022.

[6] **Ex. 5** (Uptime Armory and Collazo Bank Statements).

7

*Third*, on **August 9-10, 2024**, Mr. Collazo then transferred $1,332, 315.71 to RAV Bahamas Limited's account at Centennial Bank in the Bahamas and $143,832.00 to the closing attorneys account at RBC Royal Bank Bahamas for the purchase of the Bimini Property.

| Date | Description | Amount | Balance |
|---|---|---|---|
| 08/09 | 08/09 Consumer International Wire Debit A/C: Rbc Royal Bank (Bahamas) Limited Nassau Bahamas Bs Ref:/Cct/KS540Esh00Ai Chesters Chamberscounsel & Attorneys Tm: 3530531221Es | -143,832.00 | 1,343,697.60 |
| 08/09 | Check        # 0 | -756.37 | 1,342,941.23 |
| 08/09 | Consumer USD International Wire Fee | -50.00 | 1,342,891.23 |
| 08/09 | Domestic Wire Fee | -35.00 | 1,342,856.23 |
| 08/10 | Card Purchase        08/09 Sushi Sake Miami Lakes Miami Lakes FL Card 6280 | -53.60 | 1,342,802.63 |
| 08/10 | 08/10 Domestic Wire Transfer Via: Centennial Bank/082902757 A/C: Rav Bahamas Ltd Imad: 0810B1Qgc08C005472 Tm: 3535451221Es | -1,332,315.71 | 10,486.92 |

## ARGUMENT

Implicit in the Court's authority to freeze personal assets temporarily is the "corollary authority to release frozen personal assets or lower the amount frozen." *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427 (S.D.N.Y.2001) (citing *SEC v. Unifund SAL*, 917 F.2d 98 (2d Cir. 1990); *SEC v. Am. Bd. Of Trade, Inc.*, 830 F.2d 43 (2d Cir. 1987); and *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972). While the primary purpose of freezing assets is to facilitate compensation of investors in the event a violation is established at trial, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *Id.* Here, the considerations weigh in favor of releasing the sale proceeds from the Bimini property to Mr. Collazo for the express purposes of reinstating the Collazo homestead property where 3 minor children reside, to pay for attorney's fees that Mr. Collazo is obligated to pay in a complex and complicated case and where the assistance of defense counsel is needed *and* to cover the reasonable living expenses of the Collazo family.

### A. A Release is Warranted Because the Funds are Untainted and Mrs. Collazo is Legally Entitled to Half the Proceeds from the Sale of the Bimini Property

1. <u>No Less than 1.3 Million Dollars Were Derived from Untainted Assets Unconnected to the Conduct Alleged in the Complaint</u>

"The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.'" *U.S. Commodity Futures Trading Comm'n v. Dinar Corp.*, No. 1:15-CV-538-WKW [WO], at *7 (M.D. Ala. Feb. 29, 2016), citing *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994)). The Supreme Court has reinforced this concept albeit in addressing preliminary injunctions freezing untainted assets in antitrust actions. *De Beers Mines v. United States*, 325 U.S. 212, 215 (1945) (reversing an asset freeze when the government obtained a pretrial preliminary injunction freezing all the property the defendants held in the United States to secure payment of any fine for contempt that the court might impose should the defendants disobey a court order finding that this theory was far too broad and was not supported by statute or general equitable principles); *see also In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir. 1988) (vacating the preliminary injunction and emphasizing that "[t]he defendants' assets here, by contrast, are simply unrelated and, under *De Beers,* may not be drawn into the dispute solely to aid the plaintiffs in enforcing a potential money judgment.").

In addition to this rule of equity, the Supreme Court decision in *Debeers* and decisions from the Fifth Circuit and Eleventh Circuit analyzing asset freezes involving untainted funds, the statutory requirement found in *See* 7 U.S.C.§ 13a-1(b) obligating the CFTC to make a "proper showing" to permit the continuing restraint of property is also significant. *See* 7

9

U.S.C.§ 13a-1(b). A proper showing cannot be made where, as here, the sales proceeds are *not* connected to any of the underlying activities. *Id.*

This request also represents the unusual scenario because it stands in stark contrast to many CFTC and SEC complaints involving requests to release assets which are derived, directly or indirectly, from the underlying activities alleged in the complaint. In this case, Mr. Collazo seeks the release of assets which are untainted and entirely unrelated to the conduct alleged in the complaint. Indeed, no less than 1.3 million dollars were used to purchase the Bimini Property and were derived entirely from Mr. Collazo's successful performance of infrastructure contracts with ISW Holdings. For this reason alone, a release is warranted.

2. A Release is Warranted Because Ely Collazo is the Legal Owner of the Bimini Property Under Bahamian Law

In addition, the release is warranted because Mrs. Collazo is a joint owner of the Bimini property. Under the laws of the Bahamas, a deed grants title to the listed owners in the deed for the real property. [7]Ely Collazo and Mr. Collazo were the grantees of the deed conveyed by RAV Bahamas. Furthermore, Mrs. Collazo is not a named defendant and Mrs. Collazo has not been implicated in any aspect of the allegations supporting the complaint. Given that the most recent closing statement appears to be more than 2.7 million dollars, the requested release of $1,067,093 represents close to 1.6 million dollars less than the closing price and less than half the value of the Bimini Property at closing.

---

[7] The undersigned has consulted with at least one lawyer who is licensed in the Bahamas. It is the undersigned's understanding that, as a grantee on the recorded deed *and* by operation of law as the spouse of Mr. Collazo, Mrs. Collazo is the joint owner of the Bimini property. The undersigned intends to notice the relevant Bahamas laws pursuant to Fed. R. Civ. P. 26.1.

### B. A Release is Warranted to Pay Attorneys' Fees

Addressing the attorneys' fees, federal district courts have released frozen assets for the purpose of paying for attorneys' fees. *SEC v. Dowdell*, 175 F. Supp. 2d 850, 855-56 (W.D. Va. 2001); *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) (noting that district court "indicated willingness to release small amounts so that [the defendant] could defend this suit, and on occasion the court did so."); *U.S. Commodity Futures Trading Comm'n v. Dinar Corp.*, No. 1:15-CV-538-WKW [WO], at *7 (M.D. Ala. Feb. 29, 2016) (releasing assets to pay attorney's fees); *Sec. & Exch. Comm'n v. Ariel Quiros, William Stenger, Jay Peak, Inc. (In re in Resort, LLC)*, No. 1:16-cv-21301-DPG, at *3 (S.D. Fla. May 27, 2016) (granting a motion to lift an asset freeze to permit the defendant to sell a mortgaged real property and reinforcing that "the Court does find that Quiros should be able to pay reasonable living expenses and to retain and pay counsel. The Setai Condominium, if sold or mortgaged, would be a source of such funds"); *Fed. Trade Comm'n v. Simple Health Plans LLC*, 379 F. Supp. 3d 1346, 1365 n.14 (S.D. Fla. 2019) ( the court directed the Receiver to release $ 75,000 of Dorfman's frozen personal assets to pay for Dorman's legal fees); *SEC v. Int'l Loan Network, Inc.*, 770 F. sup. 678, 680 (D.D.C. 1991) (district court granted a "modification of the asset freeze to permit defendants to retain counsel on their behalf," despite the Ponzi scheme allegations); *CFTC v. Am. Metals Exch. Corp,* 991 F.2d 71, 79 (3d Cir. 1993) (stating the decision to release frozen funds to pay attorney's fees "is entrusted to the discretion of the district court"); *United States Sec. & Exch. Comm'n v. Larmore,* No. CV-23-02470-PHX-DLR, at *5 (D. Ariz. Apr. 22, 2024) ("The following bank account is **not** subject to the asset freeze and is to be used only for court-approved reasonable living expenses and attorney fees"); *Commodity Futures Trading Comm'n v. Alexandre*, 22-cv-3822, at *17 (S.D.N.Y. June 15,

11

2022) (authorizing reasonable legal fees); *United States v. Haley,* 2011 WL 5386328, at *1 (D. Md. Oct. 31, 2011) (in case involving post-indictment restraining order, restraining defendant and his wife from spending any funds traceable to the fraud but permitting expenditure of funds for food shelter and medical attention).

Here, the motion should be granted to permit Mr. Collazo to pay attorneys' fees. *First,* as a matter of fairness, this court should grant the motion to permit Mr. Collazo to pay his legal fees. *Dowdell*, 175 F. Supp. 2d at 856 ("[t]his court's central concern is the fairness of the proceedings. The court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel. This is a complex legal matter, and lawyers are essential to the presentation of the issues related to it."). *Second,* the CFTC cannot make a "proper showing" sufficient to permit the continuing restraint of the sales proceeds which are *not* connected to any of the underlying activity. *See* 7 U.S.C. 13a-1(b). And, indeed, the CTFC has already permitted most, if not all, of the individual defendants to receive reasonable attorney's fees without requiring a traceability analysis or any other showing. Dkt. Nos. 40, 41, 42, 48, 49, and 53. *Third,* Mr. Collazo does not have sufficient means to pay for legal counsel and should not be deprived of counsel when, as here, there are untainted assets available to pay for attorney's fees.

*SEC v. Duclaud Gonzalez De Castilla*, 170 F. Supp. 2d 427 (S.D.N.Y. 2001) is also instructive. There, the court modified an order freezing assets to permit defendants to pay legal fees. The court reasoned that the defendants presented possible challenges to the SEC's evidence and that substantial legal work had already been performed in arguing summary judgment motions. *Id.* at 430. Here, the undersigned has already performed a substantial amount of work. Among other things, that work has consisted of reviewing the complaint,

12

the SRO and its Exhibits, pleadings, communicating with clients and predecessor law firms, researching and analyzing complex legal issues related to the CFTC's enforcement actions related to foreign currency and AUX/Gold trading, preparing pleadings, and preparing for the show cause hearing. The Firm has also reviewed hundreds of documents, researched foreign law and numerous court orders, among other things. The Firm will also be required to perform additional work to determine whether to file certain pretrial motions. The Firm will be required to potentially engage in discovery, possible summary judgment litigation and, of course, prepare for a potential trial. The Firm will also perform such work in connection with potential settlement negotiations, and parallel proceedings, where applicable. And, in the short term, to competently and adequately represent Mr. Collazo, the Firm must take possession of millions of pages of records and analyze those records to appropriately and meaningfully defend Mr. Collazo against the allegations in the Complaint and/or any parallel proceedings. The costs of uploading those records onto the Firm's E-Discovery platform Logikcull, and time required to review those records, will be substantial.

And so, fairness and equity support the release of assets to compensate the attorneys in this case for the work performed to date *and* for the legal fees that Mr. Collazo is obligated to pay.

### C. A Release is Warranted to Pay the Reinstatement Fee to Salvage the Collazo Homestead and to Pay Other Reasonable Monthly Living Expenses

One of the primary purposes of a statutory restraining order authorizing an asset freeze is to maintain the status quo and to ensure that certain assets, including real property, are preserved and remain profitable. Here, up until yesterday, the Collazo's risked the imminent loss of their real property in Miami Lakes Florida on or about December 4, 2024, because

their home was subject to a public auction. [8]The loss of their home would have deprived the receivership in this case of another potential asset with significant equity. Even more significant, it would have created an undeniable hardship for the Collazos and their minor children who each live in that home, rendering them homeless. In response to this concern and after having reviewed a copy of a prior version of this Motion requesting expedited relief, counsel for the Receiver filed a Stay in the foreclosure proceedings which now significantly diminishes the concern that the Collazo's would be evicted from their home. [9]A stay, however, is not the same as the payment of the reinstatement fee which remains due and owing. And so, a release in the amount requested is still necessary to ensure reinstatement of the homestead.

Beyond the funds necessary to ensure reinstatement of their homestead, the Collazo household requires reasonable monthly living expenses.[10] The CTFC has already permitted most, if not all, of the individual defendants to receive reasonable living expenses. Dkt. Nos. 40, 41, 42, 48, 49, and 53. Courts routinely grant modifications to an asset freeze order to allow for reasonable living expenses. *Ariel Quiros, William Stenger, Jay Peak, Inc. (In re in Resort, LLC)*, No. 1:16-cv-21301-DPG, at *3 (S.D. Fla. May 27, 2016) (granting reasonable living expenses); *Simple Health Plans LLC*, 379 F. Supp. 3d at 1365 n.14 (S.D. Fla. 2019) ("The Court

---

[8] **Ex. 6** (Declaration of Sebastian Jaramillo, Esq.). Even though a stay was entered, that auction has *not* been cancelled as of this filing. https://www.miamidade.realforeclose.com/index.cfm?zaction=AUCTION&Zmethod=PREVIEW&AUCTIONDATE=12/17/2024. The Jaramillo Declaration was made prior to the Stay. **Ex. D.**

[9] **Ex. D**, Stay of Foreclosure Proceeding

[10] **Ex. 7** (Declaration of Elyam Moral Collazo). The Collazo Declaration was made prior to the Stay. **Ex. D.**

14

has already modified the asset freeze to provide Dorfman with $ 5000 per month to pay reasonable living expenses."); *Commodity Futures Trading Comm'n v. Alexandre*, 22-cv-3822, at *17 (S.D.N.Y. June 15, 2022) (authorizing reasonable living expenses); *Sec. & Exch. Comm'n v. Small Bus. Capital Corp.*, No. 5:12-cv-03237-EJD, at *4 (N.D. Cal. Oct. 16, 2012) (granting modification of freeze to allow sale of "the motorcycle and use the proceeds to pay for necessary and reasonable living expenses"); *Panyanouvong v. Aphay*, No. 2:14-cv-00275 RSM, at *8 (W.D. Wash. July 1, 2014) ("While Defendants will be undeniably burdened by an asset freeze, this freeze shall be conditioned to allow their access to funds for reasonable living expenses to minimize undue hardship").

For these reasons, Mr. Collazo seeks a release that is sufficient to pay no less than 18 months of monthly household expenses of $28,020.00 for a total of **$504,360.00** and the Reinstatement Fee **($113,563.00).**

### D. The Request is Reasonable and Leaves the Receivership with Nearly 2 million Dollars

On balance, the prejudice to the receiver and the CFTC associated with releasing the requested assets is outweighed by the unfairness that will accompany this proceeding if the Collazos are not permitted to pay legal fees and are not able to pay monthly living expenses, including for their minor children. The requested release also leaves the CFTC and receiver with nearly 2 million dollars. It is also nearly Three Hundred Thousand dollars *less than* the *untainted funds* that were used to purchase the Bimini property. And it is several hundred thousand dollars *less than* Mrs. Collazo's ownership interest in the Bimini property (likely 1.5M). Thus, this factor also supports the requested release.

### E. The Request is Reasonable Because Mr. Collazo Has Removed a Significant Roadblock to Obtaining Foreign Real Property

Equity also supports the release of the funds based on Mr. Collazo's voluntary decision to permit the receiver in the ABC case, and now this case, to sell the Bimini property. [11]Absent this decision, the CFTC would be required to obtain a judgment in this case and then seek a judgment in the Bahamas. As case law in the Bahamas recognizes, "the United States is not a prescribed country for the registration of foreign judgments in the Supreme Court of the Bahamas under the Reciprocal Enforcement of Judgments Act, 1999" and a plaintiff seeking a judgment must apply to the Supreme Court by issuing a Specially Indorsed Writ of Summons. *See Marla J. Cramin (as personal representative of the Estate of Jeffrey Cramin) vs. Bahamas Divers Ltd and Summit Insurance Ltd.,* 2018 1 BHS J No 161.[12] The court then must engage in an inquiry as to whether the foreign judgment may be enforced under common law principles. *Id.* Presumably, neither the CFTC nor the counsel for the receiver can apply for anything in the Bahamas and would be required to appoint foreign counsel to engage and undertake that process. And so, Mr. Collazo has already assisted the receivers by agreeing to sell this property without protracted foreign proceedings. This, too, is a factor that supports the requested release.

---

[11] This decision also significantly undermines the CFTC's argument in support of the *ex parte* SRO that Mr. Collazo was dissipating assets or property. Here, Mr. Collazo is doing the exact opposite of dissipating or concealing assets. Indeed, he is pledging assets to the CFTC and the Receiver.

[12] **Ex F**., Decision of the Bahamas Supreme Court

### F. The SRO Must be Modified to Exclude After-Acquired Assets

The SRO's debilitating restriction related to after-acquired assets should be removed from the SRO. Paragraph 20 of the SRO should be modified to read:

> The assets affected by this Order shall *not include* any assets acquired after the effective date of this Order *provided that* the assets are not obtained from unlawful conduct, including violations of the Commodities and Exchange Act (CEA).

This provision, or a substantially similar provision, already exists in the Consent Orders issued on behalf of the other individual defendants. Dkt. Nos. 40, 41, 42, 48, 49, and 53; *see also Commodity Futures Trading v. United Investors Group,* 440 F. Supp. 2d 1345, 1363 (S.D. Fla. 2006), *vacated on other grounds by Commodity Futures v. Levy,* 541 F.3d 1102, 1103-04 (11th Cir. 2008) (granting this relief on motion for reconsideration stating "[h]aving carefully considered the motion, the court has determined to grant the motion to the limited extent that the post judgment asset freeze shall be clarified and modified to exclude future earnings and after acquired assets from its operation, while otherwise denying the motion in all respects.")

Indeed, if the relief requested in Sections A-E of this Motion were denied, Mr. Collazo cannot pay for the reasonable living expenses of his wife and minor children or his attorney's fees while the restriction related to after-acquired income remains intact

Accordingly, to preserve the fairness of these proceedings, that restriction should be excluded from Paragraph 20 of the SRO and replaced with the modified language above.

## CONCLUSION

For each of these reasons, this Court should grant this Motion to modify the SRO (Dkt. No. 10) and the Order Authorizing Sale of Property (Dkt. No. 43).

CERTIFICATE OF CONFERENCE

I CERTIFY that on or about November 22, 2024, the undersigned and CFTC trial attorneys conferred via a Microsoft Teams conference. During that conference, the undersigned proffered to the CFTC the 3 main reasons why a release of the Bahamas sales proceeds was necessary – to save the Collazo home, to pay attorney's fees, and to pay living expenses -- and advised the CFTC as to the untainted source of the 1.3 million dollars used to purchase the Bimini property.

On November 24, 2026, at 10:45 am EST, the undersigned emailed a copy of a substantially similar Motion which included Exhibits A-D and 1-3 to counsel for the CFTC and counsel for the Receiver for their consideration and indicated that we intended to file by close of business Tuesday November 26, 2024, because of the imminent sale of the Collazo household.

On November 26, 2024, the undersigned counsel then conferred with CFTC trial attorneys at 3:30 EST via telephone. During that conference, the CFTC indicated that it was opposed to the release of *any* funds from the sale of the Bimini property but did not indicate that it believed, or had obtained any evidence, that any portion of the 1.3 million dollars used to purchase the Bimini property was tainted or connected to the underlying conduct alleged in the CFTC's complaint. The undersigned indicated that litigation would be necessary if the parties could not agree, in principle, that Mr. Collazo should be entitled to receive attorney's fees and reasonable monthly expenses from the proceeds of the Bimini property sale. The CFTC also concluded that $28,020 was not a reasonable monthly expense. The undersigned counsel advised the CFTC that Mr. Collazo was willing to engage in further discussions about that issue. The undersigned emailed the CFTC at 5:21 pm EST that Mr. Collazo intends to file this Motion today but would potentially hold it in abeyance, after filing, if the parties could agree that the sales proceeds from the Bahamas property may be applied against attorneys' fees and reasonable living expenses. The CFTC opposed.

On November 25 and November 26, the undersigned conferred with counsel for receiver, Melanie Damian. On November 25, Mrs. Damian advised that they were seeking a stay of the foreclosure proceedings and on November 26 Mrs. Damain emailed the undersigned a copy of that Stay which is attached to this Motion. On November 26, Mrs. Damian did not articulate a basis for her position with respect to the requested release of reasonable living expenses or attorney's fees, but indicated that, at this time, the Receiver opposes the relief in this Motion.

*/s/ Andrew S. Feldman*

## CERTIFICATE OF SERVICE

I CERTIFY that the foregoing was served on all counsel of record via CM/ECF.

*/s/ Andrew S. Feldman*