**THE UNITED STATES DISTRICT COURTY**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL CASE NO. 1:24-CV-23745-ALTMAN**

COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

        v.

TRADERS DOMAIN FX LTD. d/b/a
THE TRADERS DOMAIN; FREDIRICK
TEDDY JOSEPH SAFRANKO a/k/a
TED SAFRANKO; DAVID WILLIAM
NEGUS-ROMVARI; ARES GLOBAL
LTD. d/b/a TRUBLUEFX; ALGO
CAPITAL LLC; ALGO FX CAPITAL
ADVISOR LLC n/k/a QUANT5
ADVISOR, LLC; ROBERT COLLAZO,
JR.; JUAN HERMAN a/k/a JJ HERMAN;
JOHN FORTINI; STEVEN LIKOS;
MICHAEL SHANNON SIMS; HOLTON
BUGGS, JR; CENTURION CAPITAL
GROUP INC.; ALEJANDRO
SANTIESTABAN a/k/a ALEX SANTI;
GABRIEL BELTRAN; and ARCHIE
RICE,

Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT ROBERT COLLAZO'S**
**MOTION TO DISMISS**

## I.  **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b)(6), Defendant Robert Collazo ("Defendant" or "Collazo") filed a Motion to Dismiss ("Motion") Counts One and Two of the Complaint on the basis that the Commodity Futures Trading Commission ("Commission" or "CFTC") did not plead fraud with particularity.  Collazo claims that the CFTC Complaint "fails to identify a single statement – including a false statement or representation – that Mr. Collazo made individually to an investor."  *Motion* at p. 2.  Similarly, the Defendant argues that this "failure to plead fraud with particularity" also invalidates the CFTC's control person claim against Collazo on behalf of Algo Capital.  *Id*.  Alternatively, the Defendant seeks a more definite statement "as to his supposed fraudulent conduct."  *Id*.

Contrary to Collazo's selective reading of the Complaint, the CFTC details specific examples of fraudulent misstatements and omissions that Collazo, in conjunction with the other Algo Defendants, made.  Collazo's Motion also seeks to downplay the detailed misappropriation examples against Collazo which provide an independent basis for Counts One and Two.  And finally, Collazo's argument that the CFTC does not adequately alleged facts to show that he was the control person of Algo Capital LLC ("Algo Capital") and Algo FX Capital Advisor LLC ("Algo FX"), which makes him liable for any violations by the Algo entities, are similarly misleading.  The CFTC easily makes its burden to plead fraud with particularity against Collazo and separately plausibly pleads that Collazo has control person liability for Algo Capital and Algo FX.  Collazo's Motion to Dismiss should be denied in full.

## II.  **LEGAL STANDARD**

Under the notice-pleading requirements, which are applicable to the control person allegations, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Although a complaint "does not need detailed factual allegations," it must provide
"more than labels, and conclusions." *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the
elements of a cause of action will not do.") (citations omitted).  To prevail under Rule 12(b)(6), a
party's "factual allegations must be enough to raise a right to relief above the speculative level."
*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at
545).

At the motion to dismiss stage, a court must accept the factual allegations in the
complaint as true and draw reasonable inferences in plaintiff's favor.  *See Speaker v. U.S. Dep't
of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th
Cir. 2010).  The plaintiff bears the burden to frame the complaint with sufficient facts to suggest
that they are entitled to relief.  *See Twombly*, 550 U.S. at 556.  Plaintiffs make a facially
plausible claim when they plead factual content from which the court can reasonably infer that
the defendants are liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  "The
plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  *Id*.  Dismissal pursuant to a motion under
Rule 12(b)(6) is warranted "only if it is clear that no relief could be granted under any set of facts
that could be proved consistent with the allegations of the complaint."  *Shands Teaching Hosp.
& Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King
& Spalding*, 467 U.S. 69, 73 (1984)) (internal quotations omitted).

The Defendant is correct that the fraud allegations are subject to a heightened pleading
standard.  In addition to the requirements of *Twombly*, *Iqbal*, and FRCP 12(b), causes of action
grounded in fraud are subject to the pleading standards of FRCP 9(b).  *See Ambrosia Coal &
Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).  The "most basic

consideration" rooted in Rule 9(b) is to provide fair notice to defendants. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997); *see also Olhausen v. Arriva Med., LLC*, No. 21-10366, 2024 WL 5181896, at *12 (11th Cir. Dec. 20, 2024) (analyzing whether allegations provided "fair notice"). Moreover, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024). Accordingly, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," however "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FRCP 9(b). Consequently, "[t]o satisfy the Rule 9(b) standard, [fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316–17 (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). FRCP 9(b) does not require that every detail be pled. Rather, it "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *CFTC v. Worth Grp. Inc.*, No. 13-80796-CIV, 2014 WL 12461356, at *6 (S.D. Fla. Apr. 10, 2014).

## III.    ARGUMENT

Despite acknowledging that the Complaint contains no fewer than 74 specific references to Collazo's conduct, Collazo argues that the Complaint must be dismissed for failure to plead fraud against him with particularly. *Motion* at p. 2. Collazo's Motion should be dismissed for three reasons. *First*, contrary to Collazo's argument that the Complaint "fails to identify a single statement – including a false statement or representation – that Mr. Collazo made individually to

an investor," the Complaint plainly details the who, what, where, and when of the fraudulent misrepresentations and omissions made by Collazo.  *Second*, even if the Court were to find these allegations insufficient to state a claim, the Complaint also details numerous instances of misappropriation of customer funds by Collazo which proves an independent basis for liability under Counts One and Two.  *Third* and *finally*, the Complaint clearly and plausibly pleads numerous facts showing that Collazo was the control person of Algo Capital and Algo FX, and accordingly makes him liable for the violations by the Algo entities.  The CFTC easily meets its pleading burden under FRCP 9(b) and 12(b).

### A.  The Complaint Details Numerous Examples in which Collazo Committed Fraudulent Misstatements and Omissions

The CFTC, with respect to Collazo, properly alleges (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the customers; and (4) what the Defendants gained by the alleged fraud." *See Ambrosia Coal*, 482 F.3d at 1316–17 (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

### 1.  Precise Statements, Documents or Misrepresentations Made

The CFTC set out examples of the **precise documents, and the misrepresentations and fraudulent omissions contained** therein, authored by Collazo, in conjunction with the other Algo Defendants, such as:  (1) documents sent to Algo customers omitting who was doing the trading of customer funds (Compl. ¶¶ 109-111), (2) documents sent to Algo customers omitting to tell customers their funds were not going to any trading firms (*Id.* at ¶¶ 109-111, 115, 121), (3) documents sent to Algo customers omitting to tell them that Traders Domain had been placed on CFTC Red List (*Id.* at ¶¶ 109-111, 119), (4) withdrawal request form documents misrepresenting the timeframe for withdrawal and omitting to disclose that Algo did not have control over funds

(*Id.* at ¶¶ 121, 124), (5) numerous January 2022 emails drafted by and in conjunction with Collazo misrepresenting that customers withdrawals would go out imminently (*Id.* at ¶ 127).

### 2. __The Time and Place of and Person Responsible for the Statement__

The Complaint does not specify exact dates for all the documents containing fraudulent statements and omissions, that would be far too voluminous to list the dates of each of the hundreds of customer agreements and emails.  However, the Complaint identifies with specificity the *types* of documents containing these fraudulent statements and omissions (Compl. ¶¶ 107, 108, 109, 111, 115, 121, 124,127), the *manner by which they were sent* to customers (*Id.* at ¶¶ 107, 108, 111, 115, 119, 121, 124, 127), and the *time ranges* that Collazo, as well as the other Algo defendants began sending them (*Id.* at ¶¶ 101, 103, 110, 111, 117, 124, 126). Moreover, the Complaint identifies three specific emails, and included the dates sent, which Collazo, in conjunction with the other Algo Defendants, drafted and sent to customers containing fraudulent misrepresentations and omissions.  *Id*. at ¶ 127.  Despite Collazo's protestations that the Complaint left him to "guess as to the relevant conduct, which is attributable to him," this specificity is more than sufficient to put the Defendant on notice as to which documents and their associated timing the CFTC alleges are relevant.  *Cf. Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 WL 2309874, at *17 (N.D. Ala. May 8, 2020) ("Rule 9 (b) does not require a plaintiff to allege the time and content of every fraudulent statement in the event of a 'prolonged multi-act scheme,' or if the fraud took place over an extended time period."); *Riggins v. P. I. & I. Motor Express, Inc.*, No. 2:17-CV-1084-KOB, 2018 WL 1964570, at *3 (N.D. Ala. Apr. 26, 2018) (same).

The Complaint also clearly alleges that Collazo, in conjunction with the other Algo Defendants, was **one of the people responsible** for the fraudulent statements and omissions

contained in the listed customers documents and communications.  Compl. ¶¶ 101, 102, 108, 109, 111, 114, 115, 118, 119, 121, 122, 124, 127.  For each of these examples of documents containing fraudulent misrepresentations and omissions, the Complaint clearly alleges that Collazo participated in the drafting and finalizing of these Algo customer documents.  To substantiate this point, the Complaint alleges that Collazo, in addition to two other Algo defendants, had control over the DocuSign account through which the Algo customers received their written agreements.  *Id*. at ¶ 108.  The Complaint also alleges that Collazo had access to and used the Algo Support email account, the primary account used to communicated with customers, from which Algo customers received the relevant documents such as customer agreements, and communications about withdrawals.  *Id*.  And to further support the CFTC's allegations that Collazo made and was aware of fraudulent misstatements and omissions in documents sent to customers, the Complaint alleges that "[i]n communications with other Algo Defendants, Collazo stated that he received copies of every customer agreement."  *Id*.  As additional substantiation that Collazo was making and receiving customer communications, including the documents containing fraudulent misrepresentations and omissions, the Complaint highlights that the Algo FX customer agreements specifically directed customers to contact either Collazo or Fortini, in their capacity as "Manager."  *Id.*

### 3.  <u>The Content and Manner in Which the Statements Misled</u>

The Complaint alleges with specificity the content and manner in which the fraudulent statements and omissions misled Algo customers.  *Id*. at ¶¶ 104, 106-111, 113-115, 117-119, 120, 121, 124, 126, 127.  Indeed, after listing the various documents sent to the customers and specifying the fraudulent misrepresentations and omissions contained therein, the Complaint also provides specific evidence that customers believed they had been misled.  For example, the

Complaint quotes a customer email complaining that "I was told that Algo was a trading software, but it appears that Ted from Traders Domain was facilitating all trades, not Algo's software."  *Id*. at ¶ 112.  Indeed, paragraph 116 of the Complaint lays out numerous examples of customer complaints demonstrating the content and manner in which Algo customers were misled by Collazo and the other Algo Defendants.  *Id*. at ¶ 116

> **4.  <u>What Collazo Gained by the Alleged Fraud</u>**

Although the Defendant's Motion claims that the Complaint does not tell Collazo what he "gained by the alleged fraud," this is not true at all.  *Motion* at p. 7.  First, the Complaint alleges that the numerous fraudulent misrepresentations and omissions made by Collazo were for the purpose of inducing people to "deposit money for the purpose of trading leveraged or margined XAU/USD" in Algo Capital and Algo FX.  Compl. ¶ 104.  Second, the Complaint also alleges that fraudulent statements and omissions by Collazo and the other Algo Defendants were for the purpose of preventing customers from withdrawing their funds, which allowed the fraudulent scheme to continue for months even after it began to unravel.  Compl. ¶ 120.  And third, the Complaint alleges that Collazo misappropriated customer funds by accepting customer funds into bank accounts he owned, failing to trade them as purported, using customer funds for purposes unrelated to trading, and taking commissions on purported trading he knew or should have known to be false.  *Id*. at ¶¶ 142-153, 156.

**B.  The Complaint Alleges with Specificity that Collazo Misappropriated Customer Funds**

Even if the Court were to find that the Complaint failed to allege sufficient detail of misrepresentations and omissions by Collazo – which it should not – that would still not provide a basis for dismissing Counts One and Two.  Collazo's misappropriation provides an independent basis for liability under those Counts.  *See CFTC v. Allied Markets LLC*, 371 F.

Supp. 3d 1035, 1048 (M.D. Fla. 2019) (recognizing that, separate from misrepresentations and omissions, misappropriation "constitutes willful and blatant fraudulent activity" that violates 7 U.S.C. 6b); *accord CFTC v. Machado*, No. 11-22275-CIV, 2012 WL 2994396, at *4 (S.D. Fla. Apr. 20, 2012). With respect to the misappropriation allegations, Collazo argues that the CFTC's misappropriation claims against him fail "to adequately allege how he (or anyone else) did so, and to which business (Herman or Collazo) those funds flowed." *Motion* at p. 7. But that is simply untrue.

The Complaint clearly states that Collazo directed customers to deposit funds into banks accounts owned and controlled by him and Herman and accepted no less than $32 million of Algo customers funds those same accounts. Compl. ¶¶ 114, 143-147. And despite representations to customers, Collazo did not send any customer funds from the accounts that Collazo and Herman controlled to Traders Domain or any other brokerage or trading firm. *Id*. at ¶ 147. Rather than send the money to Traders Domain, the Complaint provides examples showing that Collazo misappropriated customer funds by (1) sending them to third parties (*Id*. at ¶ 148), (2) making Ponzi payments to other customers (*Id*. at ¶¶ 151-153), (3) directing them to accounts owned by other Collazo or Herman controlled businesses (*Id*. at ¶153), (4) using them to make payments/salaries of other Algo Defendants or other employees or agents of Algo (*Id*. at ¶¶150, 152), and (5) taking commissions on purported trading profits (*Id*. at ¶156).[1] The Complaint's allegations of misappropriation against Collazo detailed how the misappropriation occurred, provided examples of that misappropriation, and even identified the exact bank accounts through which the misappropriation occurred. The Defendant's argument the CFTC

---

[1] The Complaint also alleges that Collazo met with Safranko multiple times to discuss an arrangement for Algo to collect commissions based on purported trading of customer funds at TD. Compl. ¶ 102.

failed to allege how Collazo misappropriated customer funds fails upon a simple reading of the Complaint.

### C. The Complaint Alleges Numerous Facts Demonstrating Collazo's Control Person Liability for Algo Capital and Algo FX.

The Complaint alleges that Collazo is liable as a "controlling person" of Algo Capital and Algo FX under the provisions of 7 U.S.C. ¶ 13c(b).  Compl. ¶¶ 11, 22, 163.  "A fundamental purpose of Section 13b is to allow the Commission to reach behind the corporate entity to the controlling individuals of the corporation and to impose liability for violations of the Act directly on such individuals as well as the corporation itself."  *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002).  Collazo argues that "the CFTC fails to plead sufficient facts demonstrating that Mr. Collazo controlled any of the other Algo defendants."  *Motion* at p. 8. Collazo attempts to minimizes the CFTC's control person arguments by mischaracterizing them as being based "on his role as an owner of Algo and/or his co-signing authority over Algo accounts.  *Id*.  Without more, corporate titles or labels are insufficient to demonstrate the requisite level of control and management."  *Id*.  More than just his role of owner and/or account cosigning authority, the Complaint alleges numerous facts demonstrating that Collazo, as President, Manager, and owner, actively controlled Algo Capital and Algo FX.[2]  Compl. ¶¶ 23, 108, 163.  The Complaint specifically alleges that Collazo controlled the bank accounts that accepted more than $32 million of customer funds.  Compl. ¶¶ 144, 163.  It further alleges that Collazo controlled the day-to-day operations, finance, accounts, and books and records of Algo

---

[2] The question of control is not ordinarily resolved on a motion to dismiss.  *See, e.g.*, *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1381 (N.D. Ga. 2004) ("Generally, status as a control person is generally a question of fact.") (in this instance, court determined whether control person allegations adequately pled); *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) ("questions of fact ... cannot be resolved on a motion to dismiss").

Capital and Algo FX.  *Id.* ¶ 163. And contrary to Collazo's claims, the CFTC, in its Complaint, provides the "more" as well, in page after page of allegations regarding Collazo's knowing and active participation in the fraudulent scheme.

There are two elements to proving that an individual is liable as a control person.  First, a defendant must possess general control over the operation of the entity principally liable.  *See, e.g.*, *R.J. Fitzgerald*, 310 F.3d at 1334 (recognizing an individual who was a "principal and exercised the ultimate choice-making power within the firm regarding its business decisions" as a controlling person).  Not just throwaway labels, evidence that a defendant is an officer, founder, principal, or the authorized signatory on the company's bank accounts indicates the power to control a company.  "Evidence that a defendant is an officer, founder, principal, or authorized signatory on the company's bank accounts indicates the power to control a company." *CFTC v. Gutterman*, No. 12-21047-CIV, 2012 WL 2413082, at *6 (S.D. Fla. June 26, 2012); *CFTC v. Hunter Wise Commodities*, LLC, 21 F. Supp. 3d 1317, 1323 (S.D. Fla. 2014) (same); *see also CFTC v. E-Metal Merchants, Inc.*, No. 05-21571-CIV, 2006 WL 8432005, at *2 (S.D. Fla. Jan. 9, 2006) (finding defendant who was firm's secretary, controlled firm's bank accounts, and controlled day-to-day operations was a controlling person under the CEA).  And the Complaint alleges not just passive ownership or account signatory status, rather it alleges all the various active roles and titles Collazo used to control Algo Capital and Algo FX during this fraudulent scheme.  Compl. ¶¶ 108, 114, 142, 143, 144, 145, 163.  In addition to ownership, the Complaint alleges that Collazo took an active role, serving as the President of Algo Capital and Manager of Algo FX.  Compl. ¶¶ 23, 108, 163.  Collazo, along with Herman, owned and controlled the Algo Capital bank accounts that accepted all customer funds and paid the various Algo employees and agents for their work.  *Id.* at ¶¶ 114, 122, 142, 143, 144, 145.  Collazo,

along with Herman, controlled the day-to-day operations, finance, accounts, and books and records of Algo Capital and Algo FX.  *Id*. at ¶ 163.

 To establish the second element of control person liability, the CFTC must show the controlling person knowingly induced, directly or indirectly, the acts constituting the violation, or did not act in good faith.  *See R.J. Fitzgerald*, 310 F.3d at 1334; *Hunter Wise*, 1 F. Supp. 3d at 1350.  To show knowing inducement, the CFTC must show that a defendant "had actual or constructive knowledge of the core activities" that constituted the violation of the Act or the Commission's Regulations and allowed the activities to continue.  *R.J. Fitzgerald*, 310 F.3d at 1334.  "Controlling persons cannot avoid liability by deliberately or recklessly avoiding knowledge about potential wrongdoing."  *Hunter Wise*, 21 F. Supp. 3d at 1350.  Here, the Complaint alleges that Collazo had actual knowledge, or at a minimum constructive knowledge, of the core activities that constitute violations of the CEA; the Complaint alleges that Collazo himself was engaged in fraudulent conduct in conjunction with the other Algo Defendants.  For example, the Complaint alleges that (1) Collazo drafted/reviewed the customer agreement that contained core misstatements and omissions to customers about the trading business and location of customer funds (*Id*. at ¶ 108), (2) Collazo controlled and used the email account that was used to send out misstatements and omissions regarding numerous topics including, among other things, trading irregularities and the availability of withdrawals, (*Id*.), (3) Collazo, by his own admission, reviewed every customer contract (*Id*.), (4) Collazo was aware in at least July 2022 about TD's addition to the RED List yet he failed to disclose this material fact to actual and prospective customers (*id*. ¶¶ 118-19), (5) Collazo knew that he did not send customer funds for trading because he controlled the bank accounts that accepted customer funds and knew that no one else at Algo sent funds for trading as well (*Id*. at ¶¶ 114, 142-153), and (6) he participated in

meetings with and exchanged extensive communications with Ted Safranko (*Id*. at ¶¶ 44, 102). The Complaint further alleges that Collazo misappropriated funds by taking commissions on purported trading profits, even though he knew or should have known that those profits did not really exist based on numerous red flags and warnings that he received that TD was not trading funds as purported.  (*Id.* ¶ 156; ¶¶ 129-141).  By thoroughly detailing Collazo's participation in the fraud, the Complaint demonstrates and alleges Collazo's actual knowledge and lack of good faith.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Collazo is liable for Algo Capital and Algo FX's violations of the Act and Regulations.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Collazo's Motion to Dismiss in its entirety.


Dated:  December 23, 2024                    Respectfully submitted,

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION**,

*/s/ Alison B. Wilson*
ALISON B. WILSON (FL Bar A5503268)
KELLY M. FOLKS (FL Bar A5503269)
SEAN HENNESSY (FL Bar A5503270)
SARAH M. WASTLER (FL Bar A5503271)
Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
awilson@cftc.gov
kfolks@cftc.gov
shennessy@cftc.gov
swastler@cftc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

electronic transmission via this Court's CM/ECF filing system on this 23 day of December 2024,

upon all counsel and/or parties who have appeared in the above-styled action.

*/s/ Alison B. Wilson*
Alison B. Wilson

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS