UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23745-ALTMAN/Lett

**COMMODITY FUTURES
TRADING COMMISSION**,

    *Plaintiff*,

v.

**TRADERS DOMAIN FX LTD.** *d/b/a*
**THE TRADERS DOMAIN**, *et al.*,

    *Defendants*.
_____/

## ORDER DENYING DEFENDANT HOLTON BUGGS, JR.'S OMNIBUS MOTION TO DISMISS

Our Plaintiff, the Commodity Futures Trading Commission ("CFTC"), alleges that three of our Defendants—Traders Domain FX, Ted Safranko, and David Negus-Romvari (collectively the "TD Defendants")—violated the Commodity Exchange Act ("CEA") by "making oral and written fraudulent and material misrepresentations and omissions . . . in order to persuade potential and existing customers to transfer funds" and then misappropriating those funds for their own purposes. Complaint [ECF No. 1] ¶ 3. As part of an effort "to expand the scope of the fraud," the TD Defendants "recruited [other] entities and individuals to act as sponsors and solicit new customers in exchange for a percentage of purported trading profits in a manner akin to a multi-level marketing ('MLM') scheme." *Id.* ¶ 4. Having convinced us that the Defendants "have engaged in, are engaging in, or are about to engage in acts and practices in violation of the [CEA]," Order Granting Statutory Restraining Order ("SRO Order") [ECF No. 10] at 5, we granted the CFTC's *ex parte* motion to issue a statutory restraining order ("SRO") and, pursuant to 7 U.S.C. § 13a-1(a), to appoint a temporary receiver "to take control of all assets owned, controlled, managed or held by [the] Defendants," *id.* at 6.

One of the purported "sponsors" named in the CFTC's Complaint is Defendant Holton Buggs, Jr. *See* Complaint ¶ 4. On November 22, 2024, Buggs filed an Omnibus Motion to Dismiss (the "Motion") [ECF No. 76], asking us to: (1) "dismiss the Complaint" for failure to state a claim under FED. R. CIV. P. 12(b)(6); (2) "dismiss the Complaint for lack of personal jurisdiction" under FED. R. CIV. P. 12(b)(2); (3) "dissolve the receivership order issued against him"; (4) "dissolve the [SRO] issued against him"; and (5) "stay the receivership and SRO pending the Court's resolution" of this Motion. *Id.* at 2. Both the CFTC and the Court-appointed receiver, Kelly Crawford, responded to the Motion. *See* Receiver's Response to Omnibus Motion to Dismiss ("Receiver Response") [ECF No. 97]; Plaintiff's Response to Omnibus Motion to Dismiss ("CFTC Response") [ECF No. 99]. Buggs filed a Reply to these Responses. *See* Reply Memorandum in Support of Omnibus Motion ("Reply") [ECF No. 112].

While this Motion was pending, Buggs consented to the entry of a preliminary injunction. *See* Consent Order of Preliminary Injunction as to Defendant Buggs [ECF No. 144]. In doing so, the SRO and temporary receivership against Buggs has now been replaced and superseded by a preliminary injunction that he himself agreed to. Accordingly, we'll **DENY as moot** the portions of the Motion which asked us to stay and then dissolve the SRO and receivership order. The only remaining issue, then, is whether the CFTC's Complaint should be dismissed under Rule 12(b)(2) and/or 12(b)(6). After careful review, we'll **DENY** the rest of the Buggs's Motion.

## THE LAW

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a claim for lack of personal jurisdiction. "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). *First*, the court must satisfy itself that the exercise of personal jurisdiction comports with the forum state's long-arm statute. *See Proudfoot Co. World Headquarters L.P.*

2

*v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). *Second*, the court must ensure that the exercise of jurisdiction is consistent with the requirements of the Fourteenth Amendment's Due Process Clause. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). "Subjecting [a defendant] to jurisdiction in Florida comports with due process so long as 'minimum contacts' exist between [the defendant] and Florida and exercising jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1220 (cleaned up).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1214 (cleaned up). "[The] Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If a plaintiff pleads sufficient "material facts" to support the exercise of personal jurisdiction, the burden then shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence. *Id.* at 1249. If "a nonresident defendant raises a meritorious defense to personal jurisdiction through affidavits, documents or testimony," the plaintiff must then establish the propriety of jurisdiction by affidavits, testimony, or other documents. *Am. Airlines, Inc. v. Despegar.com USA, Inc.*, 2014 WL 11880999, at *3 (S.D. Fla. May 14, 2014) (Altonaga, J.) (cleaned up). In other words, the "district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *Cable/Home*, 902 F.2d at 855 (cleaned up). But where "the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Ibid.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

## ANALYSIS

Buggs moves to the dismiss the CFTC's Complaint under Rules 12(b)(2) and 12(b)(6). *See* Motion at 5–6. He first contends that the CFTC has failed to show that we have personal jurisdiction over him, as "the CFTC's entire basis for jurisdiction . . . rests on a single, isolated trip to Florida that Defendant Buggs purportedly made and that did not result in any alleged harms to Florida residents." *Id.* at 6. Buggs also alleges that the CFTC failed to state a claim under the CEA and that the Complaint "fails to plead fraud with particularity." *Id.* at 15. We'll discuss (and reject) each of these arguments in turn.

### I. The Complaint States a Claim Against Buggs

We'll start with Buggs's Rule 12(b)(6) arguments since the sufficiency of the CFTC's allegations will be relevant to our personal-jurisdiction inquiry. The CFTC has brought only one count

4

against Buggs: fraud in connection with leveraged or margined retail commodity transactions, in violation of 7 U.S.C. § 6b(a)(2)(A) and (C). *See* Complaint ¶ 277. The CFTC claims that Buggs "willfully or recklessly (1) cheated or defrauded, or attempted to cheat or defraud other persons, and/or (2) deceived or attempted to deceive other persons" by making "material representations and omissions" and "knowingly or recklessly misappropriating customer funds." *Id.* ¶ 290. Buggs believes that the CFTC has failed to satisfy its pleading burden in three ways. *First*, he says that the Complaint fails to comply with FED. R. CIV. P. 9(b) by failing "to identify a single specific fraudulent statement made by Defendant Buggs, the context of any such statements, or the recipients of any such statements." Motion at 15. *Second*, he claims that the CFTC has not shown "the requisite nexus" between Buggs's alleged acts and the TD Defendants' commodity transactions. *Id.* at 16. *Third*, he insists that the Complaint "fails to plead Defendant Buggs' scienter in anything other than conclusory fashion." *Id.* at 17. We find all three arguments unavailing.

*First*, the CFTC has sufficiently pled fraud with particularity. Federal Rule of Civil Procedure 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of this rule is to "alert[ ] defendants to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1360 (11th Cir. 2023). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "Because [7 U.S.C. § 6b(a)(2)(A), (C) is] predicated on fraud, [it]

5

must be alleged with the particularity required by Rule 9(b)." *Commodity Futures Trading Comm'n v. Monex Credit Co.*, 2020 WL 1625808, at *5 (C.D. Cal. Feb. 12, 2020).

The CFTC dedicates nearly ten pages of its Complaint to describe—in painstaking detail and with quite a lot of particularity—Buggs's allegedly fraudulent acts. *See generally* Complaint ¶¶ 190–223. For example, the CFTC recounts numerous specific examples of what Buggs's "misstatements and omissions" were and how they misled current and prospective customers about the potential profits (and risks) of the TD Pool, the ability of customers to withdraw their funds from the Pool, and the nature of the TD Pool itself. *See, e.g., id.* ¶ 197 ("[Buggs] told customers that the commodity pool had an 'incredible winning streak' and claimed that it 'never had a losing month.' Buggs told at least one individual he was making 30% returns or more monthly and sent screenshots of those returns displayed in the Trading App, including screenshots showing that his rate of return for the year was 4000%."); *id.* ¶ 201 ("Buggs falsely told at least one customer that the commodity pool used a 'very conservative' algorithmic trading bot."); *id.* ¶ 203 ("Buggs reassured [a] customer that . . . Buggs was 'in control of [his customers'] funds.' . . . In fact, Buggs did not trade his own customers' funds, nor was he in control over the funds purportedly send to TD."); *id.* ¶ 205 ("In February 2023, . . . Buggs falsely assured [a customer] that 'withdrawals have steadily gone out' from TD. Buggs knew or should have known that this statement was false: Withdrawals had not steadily gone out since August 2022.").

While the CFTC doesn't specify when *all* of these statements were made, it still provides more than enough to detail to satisfy Rule 9(b). *See, e.g., id.* ¶ 193 (claiming that Buggs solicited prospective customers "in early 2022 . . . [at] a dinner meeting in San Diego, California" and a 2022 "conference in Miami, Florida"); *id.* ¶ 203 ("In 2021, at least one prospective customer told Buggs that he had conducted a background check on Safranko and was concerned about the negative information and reviews he had seen online. . . . Buggs reassured this customer that he traded 'right beside [Safranko]'; that Buggs was 'in control of [his customers'] funds.'"); *id.* ¶ 205 ("In February 2023, when one

6

customer contacted Buggs to inquire about the delay in obtaining his withdrawal, Buggs falsely assured him that 'withdrawals have steadily gone out' from TD."); *see also MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 3d 1346, 1361 (S.D. Fla. 2000) (Gold, J.) ("While MeterLogic [did not] provide the exact time and place of all the meetings, it [did] provide this information for some of the statements. In any event, it supplies a sufficiently narrow time frame from which CS and TS could be on notice as to when these statements were made.").

Finally, the CFTC alleges that Buggs's fraudulent misrepresentations and omissions resulted in pecuniary gain. *See id.* ¶ 206 ("Buggs also claimed to a complaining customer that he also 'had not withdrawn my trading profits as they sit in TD.' Buggs knew that this statement was false: . . . Buggs, and his family, had taken at least a million dollars in purported trading profits from TD accounts during this time period."); *id.* ¶ 217 ("Buggs misappropriated some TD customer funds by accepting a . . . portion of customer funds into bank accounts he controlled and using those funds for personal use. Buggs also misappropriated TD customer funds by taking sizable commissions on purported trading profits when he knew or should have known that profits reflected in the TD Pool account were false."). The CFTC's Complaint thus meets all four of Rule 9(b)'s requirements.

Despite these extremely specific and detailed allegations, Buggs insists that the Complaint is "conclusory and generalized" and "lack[s] the specificity required under the Federal Rules and applicable case law." Reply at 3. In support, Buggs directs us to two cases, *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002), and *Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227 (S.D. Fla. 2018) (Altonaga, J.). *See* Motion at 15–16; Reply at 3. But both cases are inapposite here. In *Clausen*, the plaintiff failed to satisfy Rule 9(b)'s heightened pleading standard because he didn't make a single allegation that "a false claim [was actually] submitted to the Government." 290 F.3d at 1312. Likewise, in *Krukever*, then-Judge Altonaga found that the Defendants never identified "what the defendants obtained as a consequence of the fraud[.]" 337 F. Supp. 3d at

7

1237–38. We don't have those same problems here. Under Rule 9(b), "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). As we've discussed, the CFTC's well-pled and thorough allegations easily surmount this bar. Since the CFTC has identified "the precise misconduct with which [Buggs is] charged," *Ziemba*, 256 F.3d at 1202 (cleaned up), it has satisfied Rule 9(b) here.

*Second*, the CFTC has pled a nexus between Buggs's actions and the allegedly fraudulent commodity transactions. *See* 7 U.S.C. § 6b(a)(2) ("It shall be unlawful . . . for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market."). For starters, the Eleventh Circuit has never said that the CFTC must establish such a "nexus" to state a claim under the CEA. *See Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) ("In order to establish liability for fraud, CFTC had the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality."). And Buggs has failed to cite any case for his view that this "fourth" element is even required. *See generally* Motion; Reply. Nevertheless, even if the CEA *did* require a nexus, we find that the CFTC has plausibly pled such a nexus here. The CFTC alleges that Buggs worked with the TD Defendants to "fraudulently solicit[ ] customers to deposit money for the purpose of participating in the TD Pool" and that Buggs financially benefited from this scheme by "misappropriat[ing] customer funds[.]" Complaint ¶ 190. Because of Buggs's actions, "at least 517 [customers] deposited no less than $54 million for the purpose of trading leveraged or margined [gold-to-U.S. dollar pairs]." *Ibid.* The CFTC has plainly shown, in other words, a connection between Buggs and the TD Defendants' alleged violations of the CEA.

*Third*, the CFTC alleges that Buggs had the requisite scienter. "In the commodities-fraud context, 'scienter is shown when Defendant's conduct involves highly unreasonable omissions or misrepresentations that present a danger of misleading customers which is either known to the Defendant or so obvious that Defendant must have been aware of it.'" *Krukever*, 337 F. Supp. 3d at 1241 (quoting *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1327 (11th Cir. 2018)); *see also R.J. Fitzgerald & Co.*, 310 F.3d at 1328 ("[S]cienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care."). Buggs says that, because the CFTC "merely avers that Defendant Buggs 'ignored red flags,' without adequately identifying what those red flags were or how Defendant Buggs should have recognized them as evidence of fraud[,]" Motion at 17, the Complaint fails to establish scienter.

We disagree. The Complaint is full of allegations that Biggs knew (or should have known) that the TD Defendants were engaged in fraud but failed to stop it, disengage from the scheme, or warn customers about the potential fraud. *See, e.g.*, Complaint ¶ 210 ("Buggs continued to ignore warnings from other experienced traders that the TD Pool showed fraudulent activity. At least one other former employee of Buggs . . . told Buggs that it was possible, based upon this structure, that in fact no trading was going on at TD."); *id.* ¶ 211 ("Buggs also ignored warnings from both of these experienced traders that Buggs and TD, and their employees, were not licensed or registered, as required, to offer trading in XAU/USD."). In fact, the CFTC avers that Buggs helped perpetrate the fraud. *See, e.g., id.* ¶¶ 212– 13 ("Buggs, himself and through his assistant, instructed potential and current customers to conceal the purpose of these deposits by directing that they use certain opaque language in the wire transfer memorandum. . . . Buggs also instructed TD customers to take deceptive steps when funding their TD account through cryptocurrency."); *id.* ¶ 216 ("Instead of heeding or investigating the numerous red flags signaling that TD was a fraud and not engaged in legitimate trading, Buggs downplayed the

9

warnings and continued to solicit customers for the TD Pool, collecting millions of dollars in commissions on purported trading profits.").

Finally, the CFTC *also* accuses Buggs of misappropriating customer funds, *see id.* ¶ 217 ("Buggs also misappropriated TD customer funds by taking sizable commissions on purported trading profits when he knew or should have known that profits reflected in the TD Pool account were false."), which—standing alone—is the kind of "willful and blatant fraudulent activity" that satisfies the scienter requirement, *U.S. Commodity Futures Trading Comm'n v. Machado*, 2012 WL 2994396, at *5 (S.D. Fla. Apr. 20, 2012) (Cooke, J.). Since the CFTC's allegations "show[ ] that [Buggs] either intended to mislead [TD's] customers or made highly unreasonable misrepresentations that posed an obvious danger of misleading them[,]" *S. Tr. Metals*, 894 F.3d at 1327, the Complaint "plausibly alleges that Buggs made material misrepresentations and omissions and misappropriated funds with scienter in connection with trading of a retail commodity transaction," in violation of the CEA, *see* CFTC Response at 25.

Buggs asks us to "see through the CFTC's attempt to distract from its obvious failure to meet its dual pleading burden and should view the CFTC's allegations as the conclusory, generalized, and insufficient accusations that they are." Reply at 3. It sounds like Buggs is describing an entirely different Complaint than the one before us. Contra Buggs's position, the CFTC has meticulously set forth detailed allegations about the fraudulent nature of Buggs's conduct, the nexus between Buggs and the TD Defendants' illicit commodity-trading enterprise, and Buggs's knowledge of the scheme. In short, there's nothing "conclusory, generalized, or insufficient" about the Complaint. We therefore **DENY** the Motion's Rule 12(b)(6) arguments.

## II. We Have Personal Jurisdiction Over Buggs

Buggs next argues that the CFTC's Complaint should be dismissed under FED. R. CIV. P. 12(b)(2) because we lack personal jurisdiction over him. *See* Motion at 6 ("The Complaint's lack of

specific allegations justifying Defendant Buggs's presence in this case is especially glaring on the issue of personal jurisdiction."). Buggs avers that "the Complaint does not come close to establishing a sufficient connection between Defendant Buggs' alleged acts, any alleged injuries, and the state of Florida." *Id.* at 8–9. And, even if Florida's long-arm statute did apply, Buggs contends that we still can't exercise personal jurisdiction over him without violating the Due Process Clause of the U.S. Constitution. *See id.* at 9 ("Even if the Complaint satisfied the requirements of Florida's long-arm statute—which it does not—the Complaint must be dismissed for the independent reason that it fails to comply with the jurisdictional requirements of the Due Process Clause.").

The CFTC parries that Buggs's personal-jurisdiction argument is "based on the erroneous premise that Florida's long-arm statute applies." CFTC Response at 13. Since this action was brought under the CEA, the CFTC explains, we should instead "examine Buggs' aggregate contacts with the United States as a whole rather than his contacts with the state of Florida." *Ibid.* And, applying this standard, we can (the CFTC says) exercise personal jurisdiction over Buggs. *See id.* at 15 ("Buggs perpetrated the fraudulent activity that forms the basis of the Commission's claims throughout the United States—from Florida to Texas to California. He fraudulently solicited funds from at least 517 customers, most of whom reside in the United States, and he misappropriated some of these customer funds through bank accounts that he controlled in the United States. Based on his nationwide fraudulent conduct, Buggs should reasonably anticipate that he may be sued in any district court in the United States." (cleaned up)).

We agree with the CFTC. The CEA provides that "[a]ny action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur, and process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found." 7 U.S.C. § 13a-1(e). In other words, the CEA provides for nationwide service of

process. *See Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) ("As an initial matter, federal law allows nationwide service of process under the CEA."); *U.S. Commodity Futures Trading Comm'n v. Oakmont Fin., Inc.*, 191 F. Supp. 3d 1347, 1350 (S.D. Fla. 2016) (Dimitrouleas, J.) (holding that the CEA "contains a nationwide service of process provision"); *see also Commodity Futures Trading Comm'n v. Worldwide Commodity Corp.*, 366 F. Supp. 2d 276, 280 (E.D. Pa. 2005) ("In strong dicta, the Supreme Court cited 7 U.S.C. § 13a–1 as providing explicit authorization of nationwide service of process, because service is authorized 'wherever the defendant may be found.'" (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987))).

"When a federal statute provides for nationwide service of process," like the CEA does, "it becomes the statutory basis for personal jurisdiction." *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). But that's not the end of our inquiry: Once we've established a statutory basis for our personal jurisdiction, we must then decide whether exercising personal jurisdiction under the statute would violate the Fifth Amendment's Due Process Clause. *See ibid.* ("It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment."). "The exercise of personal jurisdiction comports with due process when (1) the [defendant] has purposefully established minimum contacts with the forum and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020) (quoting *Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)). When "personal jurisdiction is based on a federal statute authorizing nationwide service of process, 'the applicable forum for minimum contacts purposes is the United States,' not the state in which the district court sits." *Id.* at 1349–50 (quoting *Carrillo*, 115 F.3d at 1544). That said, a defendant's "minimum contacts" with the United States do not "automatically satisfy the due process requirements of the Fifth Amendment." *BCCI Holdings*, 119 F.3d at 947. The defendant could still

12

show that he "will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Ibid.* The Eleventh Circuit has repeatedly held, however, that it is "highly unusual . . . that inconvenience will rise to a level of constitutional concern." *Ibid.*; *see also Kammaona v. Onteco Corp.*, 587 F. App'x 575, 580 (11th Cir. 2014) (same).

Because of Buggs's extensive contacts with the United States, we may exercise personal jurisdiction over him *without* violating his due-process rights. Buggs "is a resident of Houston, Texas[,]" Complaint ¶ 28, who owns "a trading education company" and a "large network of MLM business[es]" that operate in the United States, *id.* ¶ 191. The CFTC also alleges that Buggs "fraudulently solicited funds from at least 517 customers, most of whom reside in the United States" and then "misappropriated some of these customer funds through bank accounts that he controlled in the United States." CFTC Response at 15 (citing Complaint ¶¶ 190, 217, 219–21). All of this is more than enough to establish that Buggs has minimum contacts with the United States. *See Marin*, 982 F.3d at 1350 ("Marin is a United States citizen who lives in New York. She is the owner and sole employee of Mint Custody, a Delaware corporation. She has purposely directed activities at the United States[.] . . . Marin's contacts with the United States easily satisfy the purposeful availment requirement."); *Carrillo*, 115 F.3d at 1546 (holding that a defendant who solicited "American investors" and "maintain[ed] bank accounts" in the United States established minimum contacts with the forum).

Nor do we find that "the exercise of jurisdiction [would] offend traditional notions of fair play and substantial justice." *Marin*, 982 F.3d at 1349. Buggs's sole argument on this point is that being forced to litigate this case in the Southern District of Florida "would impose an unreasonable burden on him." Motion at 13; *see also* Reply at 10 ("[T]he CFTC wholly ignores the extraordinary circumstances and constraints imposed by its SRO and receivership order, and how those compound the difficulty that Defendant Buggs would face if forced to litigate in Florida."). But it is Buggs's burden to "'present[ ] a compelling case' that the exercise of jurisdiction would be so unreasonable

13

that the party's 'liberty interests have actually been infringed.'" *Marin*, 982 F.3d at 1350 (quoting *BCCI Holdings*, 119 F.3d at 946). And the inconvenience to Buggs of being forced to litigate outside of his preferred federal district comes nowhere close to a due-process violation. *See Carrillo*, 115 F.3d at 1547 ("Bosque alleges that it would be burdened as a foreign national having to litigate in the United States. However, we have previously found that 'modern methods of transportation and communication' have ameliorated this sort of burden." (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996))); *BCCI Holdings*, 119 F.3d at 946 ("There is nothing inherently burdensome about crossing a state line."); *H.E.R.O., Inc. v. Self*, 2012 WL 1802431, at *6 (S.D. Fla. May 17, 2012) (Scola, J.) ("Moreover, generalized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable." (cleaned up)). Buggs's request that we consider the "extraordinary circumstances and constrain[t]s imposed by the SRO and receivership order" is unpersuasive precisely because Buggs would be subject to the same "extraordinary" limitations if the CFTC had brought this case in any judicial district. Reply at 10. In short, Buggs has failed to offer a "compelling case" that being forced to litigate in this District will cause his "liberty interests" to be infringed. *Marin*, 982 F.3d at 1350.[1]

Still resisting, Buggs contends that the CFTC cannot "rely on the CEA's nationwide service

---

[1] Buggs's argument suffers from yet another flaw. Buggs continues to insist that there's little to no connection between his alleged acts and Florida. *See* Reply at 11 ("And there is no connection between the CFTC litigating in Florida and the vindication of its purported federal right—it can achieve 'vindication' in Texas no less than in Florida."). This misses the point because "a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis." *BCCI Holdings*, 119 F.3d at 946; *see also, e.g.*, *Fed. Trade Comm'n v. Marcus*, 2018 WL 1125830, at *1 (S.D. Fla. Jan. 8, 2018) (Moreno, J.) ("Where federal law authorizes nationwide service of process, as is the case with the FTC Act, the relevant question becomes whether the person or corporation has minimum contacts with the United States. In his motion, James Marcus argues he is a resident of California and lacks minimum contacts with the forum state of Florida. His argument clearly misses the mark, as his contacts with Florida are irrelevant in a case brought under the FTC Act." (cleaned up)). That Buggs "may not have had significant contacts with Florida is insufficient to render Florida an unreasonably inconvenient forum," unless he can show an "infringement of [his] individual liberty interests protected by the Due Process Clause of the Fifth Amendment." *BCCI Holdings*, 119 F.3d at 948. Since Buggs has failed to make that showing, we may exercise personal jurisdiction over him.

14

of process provision" because: (1) its claim against Buggs is "wholly immaterial or insubstantial"; and (2) the Complaint fails "to assert personal jurisdiction over Defendant Buggs . . . based on that provisions of the CEA." Reply at 6–7. Both arguments miss their mark. *First*, as we've explained, the CFTC has done more than enough to state a plausible claim against Buggs under the CEA. *See ante*, at 4–10. Since the CFTC's "asserted federal claim is not wholly immaterial or insubstantial, [it] is entitled to take advantage of the federal statute's nationwide service of process provision." *BCCI Holdings*, 119 F.3d at 942. *Second*, the Complaint plainly relies on the CEA's nationwide-service provision to assert personal jurisdiction over all the Defendants (including Buggs). *See* Complaint ¶ 15 ("Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants reside in, transact, or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District."). And the CFTC's failure to attach the words "personal jurisdiction" to a CEA citation in its Complaint doesn't preclude it from availing itself of the CEA's nationwide service of process provision. *See Burger King Corp. v. Holder*, 844 F. Supp. 1528, 1531 (S.D. Fla. 1993) (Nesbitt, J.) ("Federal Rule of Civil Procedure 8(a) does not require a plaintiff to plead the basis for personal jurisdiction over a defendant."); *see also Brooks v. United States*, 723 F. App'x 703, 705 (11th Cir. 2018) ("But motion practice is not talismanic, and we do not require petitioners to recite magic words.").

The CEA invests district courts with personal jurisdiction over any defendant with sufficient minimum contacts in the United States—so long as the exercise of personal jurisdiction over that defendant "[would] not offend traditional notions of fair play and substantial justice." *Marin*, 982 F.3d at 1349. Buggs has far more than "minimum" contacts with the United States, and he hasn't shown that our exercising personal jurisdiction over him would impose on him an unconstitutional burden. Accordingly, his Rule 12(b)(2) arguments are **DENIED**.

**CONCLUSION**

After careful review, therefore, we **ORDER and ADJUDGE** that Holton Buggs Jr.'s Omnibus Motion [ECF No. 76] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on January 17, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record