UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23745-ALTMAN/Lett

COMMODITY FUTURES
TRADING COMMISSION,

    *Plaintiff*,

v.

TRADERS DOMAIN FX LTD. *d/b/a*
THE TRADERS DOMAIN, *et al.*,

    *Defendants*.
_____/

## ORDER GRANTING RECEIVER'S MOTION TO COMPEL COMPLIANCE

On October 3, 2024, we entered a statutory restraining order forbidding "the Defendants and all other persons and entities" from, among other things, "enforcing any lien upon . . . property of the Receivership Defendants" and "[d]oing any act or thing whatsoever to interfere with the [Receiver] taking control, possession, or management of the property subject to the receivership[.]" Statutory Restraining Order ("SRO") [ECF No. 10] ¶¶ 36(d), (f). Many months later, on June 9, 2025, we gave the Receiver permission to immediately sell Defendant Juan Herman's real property located at 6021 SW 88th Street, Miami, Florida 33156 (the "Property") for $1,995,000.00 "because it is the best interest of the Receivership Estate[.]" June 9, 2025, Omnibus Order [ECF No. 252] at 1–2.

But this sale hasn't gone according to plan. The Receiver recently learned that Brian Bottorff—an investor who was victimized by the Defendants—placed a lien on the Property after he "sued Mr. Herman in small claims court and obtained a final default judgment . . . on October 17, 2024 in the amount of $8,000 plus interest." Motion to Compel Compliance ("Motion") [ECF No. 314] at 2. Although the Receiver and Mr. Bottorff have tried to resolve their differences, Mr. Bottorff "informed the Receiver that he will only release his lien upon a court order." *Id.* at 3. The Receiver asks us to

"order Mr. Bottorff to comply with the Receiver's requests to release the lien on the [Property]" because his actions violate paragraphs 36(d) and 36(f) of the SRO. *Id.* at 4. We ordered Mr. Bottorff to show cause "why we shouldn't grant the Receiver's Motion and compel him to release his lien on the Property[.]" Aug. 18, 2025, Paperless Order [ECF No. 315]. Mr. Bottorff complied and filed a *pro se* response. *See* Response of Non-Party Brian Bottorff to Show Cause Order ("Response") [ECF No. 319]. The Receiver replied to the Response. *See* Reply to Non-Party Brian Bottorff's Response to Order to Show Cause ("Reply") [ECF No. 321]. After careful review, we now **GRANT** the Receiver's Motion.

One main purpose of the Commodity Exchange Act is to "protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets[.]" 7 U.S.C. § 5(b). To protect the public from these abuses, the Act gives district courts the power to "enjoin such act or practice" and to appoint a receiver "to administer such restraining order and to perform such other duties as the court may consider appropriate[.]" *Id.* § 13a-1(a). To ensure that the victims of the Defendants' wrongful acts will receive compensation, our SRO protects the assets in the Receivership Estate (and the Receiver's ability to administer those assets) by forbidding any person from enforcing a lien or taking any other action that interferes with the "Receiver taking control, possession, or management of the property subject to the receivership[.]" SRO ¶ 36(f).

Mr. Bottorff secured an $8,964.63 judgment against Defendant Herman on October 17, 2025, and, by operation of Florida law, that judgment turned into a lien on the Property. *See* Final Default Judgment [ECF No. 314-1] at 1; *see also* FLA. STAT. § 55.10(1) ("A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county[.]"). But our SRO forbids this lien from being placed on the Property.

Mr. Bottorff doesn't deny that he has a lien on the Property, but he claims that, for four

2

reasons, his "lien is protected by Eleventh Circuit precedent and due process." Response at 3. *First*, Mr. Bottorff cites *S.E.C. v. Wells Fargo Bank, N.A.*, 848 F.3d 1339 (11th Cir. 2017), and *In re Bozeman*, 57 F.4th 895 (11th Cir. 2023), for his view that he "hold[s] a valid, pre-existing security interest created under state law" and that the Receiver "lack[s] authority to extinguish valid state-law property rights[.]" *Ibid. Second*, he says that any order extinguishing his lien would violate his due-process rights because he "perfected his lien without notice of the SRO." *Id.* at 4. *Third*, he contends that an order extinguishing his lien would violate the *Rooker-Feldman* doctrine because it "would amount to a *de facto* reversal of the state judgment's lien effect." *Id.* at 5. *Fourth*, he insists that it would be unfair for us to extinguish his lien because he "reported fraud to the CFTC in March 2023, waited over a year, [and] then pursued lawful state remedies." *Ibid.* Mr. Bottorff also suggests that we protect his interests by *either* "holding funds equal to the lien in escrow pending resolution of lien priority" *or* recognizing his lien "as a secured, priority claim in the claims process[.]" *Ibid.* We'll review (and reject) each of Mr. Bottorff's arguments in turn.

For starters, *Wells Fargo* and *In re Bozeman* are distinguishable from our case. The Eleventh Circuit in *Wells Fargo* held that "security interests in property are determined by state law, and that 'a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state[.]'" 848 F.3d at 1344 (first citing *Butner v. United States*, 440 U.S. 48, 55 (1979); and then quoting *Marshall v. New York*, 254 U.S. 380, 385 (1920)). For that reason, the court expressly disapproved of the district court's order extinguishing "a secured creditor's *preexisting* state law security interest by operation of its own claims administration process." *Ibid.* (emphasis added). Likewise, in *In re Bozeman*, the Eleventh Circuit confirmed that a bankruptcy court couldn't extinguish *preexisting* secured interests. *See* 57 F.4th at 908 ("The bankruptcy court's order did not just release MCS's lien in part; it released it in full. Even though MCS had a secured interest in Bozeman's home, MCS has received payment for only the arrearages that were included in its claim. So release of

MCS's lien would cause the remainder of its interest to simply evaporate, regardless of its substantive rights under the terms of the mortgage and Alabama law."); *see also Wells Fargo*, 848 F.3d at 1344 ("In the bankruptcy context, a secured creditor's lien remains intact through the bankruptcy, regardless of whether the creditor files a proof of claim." (citing *In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003)).

That's not the situation we have here. Mr. Bottorff's lien on the Property was perfected once he secured a default final judgment against Defendant Herman on October 17, 2024. *See* Default Final Judgment at 1. But we entered our SRO—which gave the Receiver the authority to "[t]ake exclusive custody, control and possession of the Receivership Estate"—on October 3, 2024. SRO ¶ 30(b). Our SRO, in short, was in place two weeks *before* Mr. Bottorff obtained his lien. *See* Reply at 3 ("[T]he lien at issue in that case was secured before the receivership order. Here, Mr. Bottorff secured his lien after the SRO was entered."). When we gave the Receiver control over the Property on October 3, 2024, therefore, it was unencumbered by Mr. Bottorff's lien. This chronology renders *Wells Fargo* and *Bozeman* inapposite to our case.

Mr. Bottorff's due-process argument fails for similar reasons. He argues that he "perfected his lien without notice of the SRO" and that the SRO "binds only persons 'having notice of this Order.'" Response at 4.[1] Since Mr. Bottorff didn't have notice of the SRO when his lien was perfected, he insists, we'd violate his due-process rights by extinguishing that lien. *See ibid.* ("[R]etroactive extinguishment of a lien via *ex parte* order is unconstitutional absent urgent need." (citing *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991))). We agree, of course, that "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). But Mr. Bottorff didn't have a lien on the Property until

---

[1] This portion of Mr. Bottorff's Response misquotes paragraph 35 of the SRO. In that paragraph, the SRO provides that the "Defendants, and all other persons or entities served with a copy of this order, shall cooperate fully with and assist with the [Receivership]." SRO ¶ 35.

4

*after* we issued the SRO. Mr. Bottorff didn't have a procedural due-process right to receive notice of an SRO that interfered with a lien he *didn't* yet possess. *Cf. Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (cleaned up)); *see also Owings v. Brown*, 86 F.3d 1178, at *1 (Fed. Cir. 1996) (holding that an applicant "who might qualify for future veterans' benefits" doesn't possess "a due process property interest in the expectation of those benefits").

Next, Mr. Bottorff says that an order extinguishing his lien would "amount to a *de facto* reversal of the state judgment's lien effect" and violate the *Rooker-Feldman* doctrine. Response at 5. Not so. The *Rooker-Feldman* doctrine is "narrow" and stands only for the limited proposition that "federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *Efron v. Candelario*, 110 F.4th 1229, 1236 (11th Cir. 2024). Mr. Bottorff's state-court case against Defendant Herman involved claims of negligent misrepresentation, unjust enrichment, breach of fiduciary duty, conversion, and violations of the Florida Unfair and Deceptive Trade Practices Act. *See generally* Statement of Claim, *Bottorff v. Herman*, No. 24-128763-SP-23 (Fla. Miami-Dade Cnty. Ct. July 2, 2024).[2] Because an order extinguishing Mr. Bottorff's lien won't require us to relitigate those underlying claims or to review the state court's judgment for errors, it falls outside the ambit of *Rooker-Feldman*. *See Behr*, 8 F.4th at 1212 ("[*Rooker-Feldman*] does not need to be a source of confusion in federal law. Nor can it be a broad means of dismissing all claims related in one way or another to state court litigation. Its application is

---

[2] We can (and will) take judicial notice of the filings in Mr. Bottorff's state-court case because Federal Rule of Evidence 201 allows us to consider records that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)).

5

narrow and—surprisingly enough—quite simple. It bars only cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (cleaned up)).

Finally, Mr. Bottorff advances several arguments based on equitable principles. He contends that it would be unfair to "punish" him for vindicating his own interests—which he accomplished by pursuing "lawful state remedies." Response at 5. He also suggests that we can "preserve [his] lien's secured status through narrowly tailored measures[,]" such as through escrow protection or priority recognition, without harming the Receivership Estate. *Ibid.* We're sympathetic to Mr. Bottorff's arguments and understand why it seems unfair for us to extinguish a lien that was meant to compensate him for the losses he suffered at the Defendants' hands. But, as the Receiver points out, we have an obligation to protect the Receivership Estate and to ensure that *all the victims*—not just Mr. Bottorff—are made whole through restitution. *See* Reply at 3 ("The Receiver sold the South Miami Property to obtain funds for the benefit of the Receivership Estate and the victims of Mr. Herman's fraud. To permit Mr. Bottorff to obtain an unfair advantage over the other victims by asserting a lien obtained after the date of the SRO without leave of Court would be inequitable."); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership."). For this reason, allowing Mr. Bottorff's lien to stand—or giving his interest a higher priority vis-à-vis other victims—would be inequitable.

Where does all this leave Mr. Bottorff? It would be unfair (it goes without saying) for us to extinguish his lien *without* giving him an opportunity to recoup his losses from the Defendants. We thus propose two different paths. *First*, Mr. Bottorff may submit a claim—just like every other victim—in accordance with the procedures we outlined in our Order Approving Claims Adjudication Process [ECF No. 223]. *Second*, Mr. Bottorff and the Receiver can agree to a settlement that might save the parties additional time and money. If Mr. Bottorff and the Receiver reach a settlement, they

6

may file a joint motion on the docket asking us to approve the settlement and to disburse funds as appropriate. Either way, Mr. Bottorff *must* release his lien on the Property and comply with the SRO.

\* \* \*

Accordingly, we hereby **ORDER AND ADJUDGE** as follows:

1. The Receiver's Motion to Compel Compliance [ECF No. 314] is **GRANTED**.

2. Non-party Brian Bottorff **SHALL** release his judgment lien on the real property located at 6021 SW 88th Street, Miami, Florida 33156 by **September 10, 2025**. Failure to do so may result in sanctions, including the institution of civil-contempt proceedings against him.

3. By **September 24, 2025**, Brian Bottorff must either: (1) file a proof of claim with the Receiver; or (2) reach a settlement with the Receiver and voluntarily release any claims he may have against the Defendants. Failure to do either may result in the forfeiture of any monetary claims he may have against the Defendants.

**DONE AND ORDERED** in the Southern District of Florida on September 3, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record