**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-23745-ALTMAN/Lett**

**COMMODITY FUTURES**
**TRADING COMMISSION**,

       *Plaintiff,*

*v.*

**TRADERS DOMAIN FX LTD.** *d/b/a*
**THE TRADERS DOMAIN**, *et al.,*

       *Defendants.*

_____/

**ORDER GRANTING RECEIVER'S APPLICATION**
**TO PAY FORENSIC ACCOUNTANTS**

We've authorized the Receiver to receive "reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were: (1) reasonably likely to benefit the receivership estate; or (2) necessary to the administration of the estate." Order Granting Motion for Statutory Restraining Order and Appointment of a Temporary Receiver ("Receivership Order") [ECF No. 10] at 19–20. To receive this compensation, the Receiver must "file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation[.]" *Id.* at 20.

The Receiver has filed an application to pay $219,705.10 in fees and expenses to the Receiver's forensic accountants, KapilaMukamal, CPAs, Forensic and Insolvency Advisors ("Kapila"), "for their work from October 3, 2024 through July 30 2025. (the 'Application Period')." Receivers Amended Application to Pay Forensic Accountants (the "Application") [ECF No. 349] at 1. Neither the Commodity Futures Trading Commission nor the Defendants are opposed to the application.[1] After

---

[1] We ordered any Defendant opposed to the Application to file a response explaining its objection by September 26, 2025. *See* Paperless Order [ECF No. 337]. One Defendant, Holton Buggs, filed a

careful review, we now **GRANT** the Receiver's request in full.

### THE LAW

A receiver is entitled both "to compensation for the work they performed" and reimbursement "for the actual and necessary expenses they incurred in the performance of their duties." *F.T.C. v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013) (Antoon, J.) (citing *S.E.C. v. Elliott*, 953 F.3d 1560, 1567, 1576–77 (11th Cir. 1992)). "The party seeking attorney's fees bears the burden of establishing entitlement and reasonableness. The movant must supply the Court with detailed records showing the amount of time spent on the claim, as well as the nature of the activity at each stage of the case." *Sec. & Exch. Comm'n v. BK Coin Mgmt., LLC*, 2024 WL 4697686, at *2 (S.D. Fla. Oct. 22, 2024) (Goodman, Mag. J.) (first citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); and then citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)), *report and recommendation adopted*, 2024 WL 4692191 (S.D. Fla. Nov. 6, 2024) (Scola, J.) Our analysis of the reasonableness of a fee "is informed by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.3d 714, 717–19 (5th Cir. 1974) (the '*Johnson* factors') as well as the court's own knowledge and experience." *Fed. Trade Comm'n v. Click Profit, LLC*, 2025 WL 2256543, at *2 (S.D. Fla. July 8, 2025) (Leibowitz, J.) Federal courts employ the "lodestar method to determine the reasonableness of a Receiver's fees and those of the professionals [he] hires." *Ibid*; *see also Fed. Trade Comm'n v. JPM Accelerated Serv., Inc.*, 2010 WL 11626760, at *2 (M.D. Fla. Jul. 12, 2010) (Spaulding, Mag. J.) ("Courts have held that a lodestar-style analysis is appropriate in evaluating the reasonableness of fees charged by accountants and other non-attorney professionals.). This method requires us "to multiply the

---

response objecting to the Application on September 26, 2025. *See* Response [ECF No. 343]. Before we could issue this Order, though, Defendant Buggs withdrew his objections. *See* Notice of Withdrawal of Motion [ECF No. 351]. Because Defendant Buggs withdrew his objections, we won't address them here.

number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley*, 461 U.S. at 433).

ANALYSIS

The Receiver seeks to pay Kapila $216,235.28 in fees and $3,469.92 in costs incurred during the Application Period, for a total of $219,705.10. *See* Application at 10. Applying the lodestar method, and employing our own expertise, we find this amount to be reasonable.

a. <u>**Reasonable Hourly Rate**</u>

The first step of the lodestar method is "determining the reasonable hourly rate" for the services provided. *Loranger*, 10 F.3d at 781. Kapila's invoice reflects a blended hourly rate of $311.13 after factoring in a 20% discount the Receiver negotiated. *See* Exhibit A (the "Kapila Invoice") [ECF No. 349-1] at 2.[2]

After a close review of the Application and the Kapila Invoice, we find that the blended hourly rate Kapila charged is reasonable. As the Application makes clear, the services performed "required individuals possessing considerable experience in forensic accounting, the administration of receiverships, claims processes, asset seizure, collection and litigation" and concerned "a vast web of accounts controlled by the several Defendants and their associated entities." Application at 7. The Application also notes that the "Forensic Accountants have experience in providing forensic accounting services to equity receivers in federal securities or commodities enforcement cases and have done so for numerous years. The Forensic Accountants have assisted federal equity receivers in over 20 federal court cases brought by either the CFTC or the Securities and Exchange Commission."

---

[2] The Receiver tells us that "the Forensic Accountants provided 695 hours of service at a discounted blended hourly rate of $382.60," Application at 2, while the Kapila Invoice shows a blended hourly rate of $311.13, *see* Kapila Invoice at 2. We believe that the $382.60 blended rate fails to account for the 20% discount on Kapila's services, so we'll rely on the discounted rate of $311.13 in our analysis. Even if the correct hourly rate were $382.60, though, we don't believe this rate would be unreasonable.

3

*Id.* at 9. We find it unlikely that Kapila would continue to be retained to support equity receivers if their fees were not commensurate with the market rate for their services. Indeed, several judges in our District have found Kapila's fees reasonable over the years. *See Fed. Trade Comm'n v. Student Debt Dr. LLC*, 2018 WL 4922466, at *1 (S.D. Fla. Jan. 26, 2018) (Dimitrouleas, J.) (adopting report & recommendation finding Kapila's blended hourly rate of $275.00 reasonable); *see also Sec. & Exch. Comm'n v. Onix Cap. LLC*, 2020 WL 9549523, at *1 (S.D. Fla. May 13, 2020) (Cooke, J.) (adopting report & recommendation finding Kapila's hourly rates of between $150−350 reasonable). Kapila's hourly rate is also in line with other professional rates we've previously found reasonable in this case. *See* Order Granting Fourth Fee Application [ECF No. 302] at 2 (finding "[t]he Receiver's hourly rate [of] $395.00, Scheef & Stone's blended hourly rate [of] $240.00, and DVC's blended hourly rate [of] $322.00" reasonable).

**b.  <u>Hours Reasonably Expended</u>**

In determining the "hours reasonably expended" on a case, a district court should exclude hours that were "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client . . . irrespective of the skill, reputation or experience of counsel." *Ibid.* "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350.

We don't think Kapila billed hours that were excessive, redundant, or otherwise unnecessary. The Kapila Invoice shows that nine Kapila professionals spent a combined total of 695 hours "to review the bank records gathered during the receivership and prepare a forensic accounting to assist the Receiver in the claims process and in identifying recipients of fraudulent conveyances or false

profits." Application at 1-2. These services consisted of bank record analysis and reconstruction, analysis for the Receiver and his counsel, assistance with the claims process, attendance at meetings and conferences, and support for hearings and the recovery of assets. *See* Application at 1−4. As of this writing, Kapila has reconstructed "46 accounts with over 63,0000 transactions," which will "serve as the basis for the Receiver's verification of claims made by investors and other parties, as well as for the Receiver's claims against transferees of assets of the Defendants and their entities during the next phase of the Receivership." Application at 3. The Kapila Invoice, which spans 37 pages, confirms the breadth of the services Kapila provided and provides sufficient detail to describe the work the firm conducted. We find the hours expended to provide these complicated services reasonable. These services are necessary for the Receiver to "preserve assets, investigate and determine customer claims, determine unlawful proceeds retained by Defendants and amounts due to customers as a results of Defendants' alleged violations, and distribute remaining funds under the Court's supervision" and to "determine the location and disposition of customer funds and ill-gotten gains." Receivership Order at 6.

Given the necessity of Kapila's service to the Receiver's performance of his duties and the reasonableness of both the hourly rate and the hours expended, we'll authorize the Receiver to pay Kapila for its services.

Accordingly, we hereby **ORDER and ADJUDGE** that the Receiver's Amended Application to Pay Forensic Accountants [ECF No. 349] is **GRANTED**. The Receiver is authorized to pay KapilaMukamal, CPAs, Forensic and Insolvency Advisors $219,705.10 from the receivership assets recovered by the Receiver for the fees and costs incurred during the Application Period.

**DONE AND ORDERED** in the Southern District of Florida on October 3, 2025.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record