## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-cv-23745-ALTMAN

COMMODITY FUTURES
TRADING COMMISSION,

     *Plaintiff,*

v.

TRADERS DOMAIN FX LTD. *d/b/a,*
THE TRADERS DOMAIN, *et al.,*

     *Defendants.*

_____/

### RECEIVER'S REPLY IN SUPPORT OF HIS
### MOTION TO EXPAND RECEIVERSHIP

Court-Appointed Receiver, Kelly M. Crawford, replies to Defendants' Joint Response in Opposition to Receiver's Motion to Expand Receivership ("Response") [ECF 361], and states:

### I.    SUMMARY

The Court should grant the Receiver's Motion to Expand Receivership [ECF 354] ("Motion") because far from being based on "speculation," the Motion is grounded in comprehensive forensic accounting analysis of bank records and sworn deposition testimony, which establish that the targeted entities either were owned or controlled by the Receivership Defendants,[1] were used to perpetrate the fraudulent scheme, and

---

[1] The *Sealed Order Granting Plaintiff's Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO")* [ECF 10], as continued in effect by the Preliminary Injunctions entered as to each Defendant, defines "Receivership Defendants" as the "Defendants and their affiliates and subsidiaries owned or controlled by Defendants."

received substantial ill-gotten gains from investors or other scheme-related entities. The Defendants' arguments fail to address the core evidence of extensive commingling, personal use of corporate funds, and the flow of investor money into these entities, which are hallmarks of a corporate alter ego.  This expansion is a remedial measure necessary to maximize restitution for victims by fully consolidating assets entangled in the fraud.

## II.   ARGUMENT

### A.   The Receiver's Request is Fully Justified, Remedial, and Meets the Evidentiary Standard for Receivership Expansion.

Defendants misstate both the law governing receivership expansion and the robust factual record presented in the Motion.  As recognized by the Eleventh Circuit, "[a] district court has 'broad powers and wide discretion to determine relief in an equity receivership.' " *SEC v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) (quoting *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)).  The Motion directly invokes this broad equitable power of the Court to expand the Receivership where necessary to effectively administer the estate and recover assets. Moreover, the Motion sufficiently satisfies the evidentiary burden required with the sworn declarations of the Receiver ("Receiver's Declaration") and forensic accountant Melissa Davis, CPA, CIRA, CFE of KapilaMukamal, LLP ("Davis Declaration").  ECF 354 at 17-20, 24-74.

The comprehensive Davis Declaration includes a meticulous analysis of bank records obtained via subpoena for each targeted entity.  The methodology for identifying "investor" and "potential investor" funds is clearly articulated based on consistent patterns in the fraudulent scheme and corroborated by investor lists and

claims data.  ECF 354 at Exhibit B and Exhibits C.1 through C.14.  This analysis demonstrates a direct nexus between these entities and the fraudulent scheme providing a tracing of investor funds, rather than "speculation and inference."

This level of proof is precisely the "specific, competent evidence" required for expansion, particularly when such entities received ill-gotten funds and have no legitimate claim to them.  *See SEC v. Faulkner*, 2018 U.S. Dist. LEXIS 155666, at *12-13 (N.D. Tex. Sept. 12, 2018).  There, the receiver sought to expand the receivership to include various interrelated entities involved in a massive fraud scheme.  The court granted the expansion over entities that were "controlled by Faulkner to which the unrebutted evidence indicates he may have redistributed either BOG's or BECC's investors' assets."  *Id.* at *15 (quoting *SEC v. Faulkner (Faulkner 1)*, 2017 U.S. Dist. LEXIS 155832 at *4 (N.D. Tex. Sep. 25, 2017)).  The *Faulkner* court explicitly recognized that receivership is appropriate "where there is a clear necessity to protect a party's interest in property" and to prevent assets from being subject to "diversion and waste to the detriment of those who were induced to invest in the corporate scheme."  *Id.* at *14 (citing *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) and *SEC v. First Fin. Grp.*, 645 F.2d 429, 438 (5th Cir. 1981)).

The Receiver's unrebutted Declarations and deposition testimony, demonstrate that the targeted Related Entities are either controlled by the Receivership Defendants or were used as conduits by them.  And the unrebutted tracing showing that these entities received millions of dollars from Traders Domain investors or from other entities related to the scheme.

Defendants' argument that the Receiver has not established that the targeted entities acted "in concert" with, or served as "alter egos" of, the original defendants, and asserting that "mere commingling" is insufficient, is refuted by the unrebutted evidence of a systemic disregard for corporate separateness and a deliberate abuse of the corporate form to perpetuate the fraud and enrich the Defendants. This includes specific instances across multiple entities where corporate assets were used for Defendants' personal purposes – which *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 U.S. Dist. LEXIS 83769, at *5 (S.D. Fla. May 3, 2021) identifies as a key factor for finding an alter ego relationship.

This record demonstrates a pervasive pattern where Defendants treated the entities as extensions of their personal finances, without regard for corporate formalities, justifying expansion under established alter ego principles. *See SEC v. Torchia*, 2016 U.S. Dist. LEXIS 147123, at *9 (N.D. Ga. Oct. 25, 2016); *see also SEC v. Elmas Trading Corp.*, 620 F. Supp. 231 (D. Nev. 1985) ("Under the doctrine of alter ego liability, [a court] may disregard the corporate entity and treat the acts of the corporation as if they were done by the controlling corporation lying behind the corporate shell or the individuals.").

The cases cited by Defendants, such as *United States v. Puche*, 350 F.3d 1137, 1141 (11th Cir. 2003), which address forfeiture in the context of mere commingling, are inapposite given the Receiver's detailed tracing of ill-gotten gains used for personal benefit. Significantly, none of the Defendants provide sworn testimony or

any other evidence that the Receiver's tracing is inaccurate or that the entities were not used to perpetuate the fraud and enrich the Defendants.

**B.      The Standard for Expansion is Met: Each Targeted Entity is Clearly Connected to the Fraud.**

The Receiver's investigation uncovered overwhelming evidence demonstrating that every entity targeted for expansion either was owned or controlled by the Receivership Defendants,[2] or was actively used to perpetrate the fraudulent scheme and received substantial ill-gotten gains.

1.      Non-Sponsor Related Entities (SAEG Capital Ltd, SACAP Holdings, Inc., SECAP Holdings, LLC, and MTT9 Holdings, LLC): Active Conduits in the Traders Domain Fraud.

Defendants' objections to including the Tin Quoc Tran entities are based on a fundamental misapprehension of the current Receivership's scope and purpose, especially given the Receiver's pre-existing involvement.   The Receiver's broad authority to expand to "affiliates or subsidiaries owned or controlled by [Defendants]" is established in the original SRO.   ECF 354 at 2, citing SRO ¶ 29.   The Davis Declaration demonstrates that Mr. Tran's entities were used to perpetuate the *Traders Domain fraudulent scheme* by receiving over $130 million from Traders Domain investors, and millions from Receivership Defendant, Algo Capital, LLC. ECF 354 at 2-4, 35-36.   This evidence establishes the entities' involvement as conduits in *this* scheme, making them Related Entities under the SRO.   The argument that Tran is a non-party ignores the clear evidence that his entities actively received and transferred funds from *this* fraud.

---

[2] *See supra*, n.1.

Defendants erroneously argue "prior receivership/double billing" and "conflicts of interest" based on Kelly Crawford's prior appointment as Receiver in *CFTC v. Marcus Todd Brisco, et al.* (S.D. Tex. July 26, 2024) (the "SAEG Case"). The Receiver's prior experience is a key reason for his appointment *in this case*. Indeed, the Receiver's expertise and knowledge of Tran's operations gained from the SAEG Case uniquely positioned him to identify the involvement of Tran's entities in *this* case.

Moreover, the SAEG Case involved a distinct pool of assets related to different investor pools. Expanding the Receivership *in this case* is about tracing and recovering assets specifically tied to the Traders Domain fraud for *its* victims, regardless of the entities' prior involvement with other investor pools. The argument of "double billing" or "conflicts of interest" ignores that these entities served as vehicles for multiple distinct frauds. The argument that the Receiver waived any claim is baseless, as the Receiver is now acting in the context of a new pool of investors.

Finally, the very filing and service of this Motion to Expand Receivership, along with its declarations and exhibits, on all parties, including those representing Tran, constitutes the fundamental notice and opportunity to be heard required by due process. As of the filing of this Reply, the Receiver has served the Motion on Alpha Trader, SACAP Holdings, and SAEG Capital. *See* Returns of Service, ECF No. 367, 368, and 369. Further, the Court is not being asked to adjudicate property rights without notice; this Motion *is* that process, fully consistent with the principles of

*CCUR Aviation* regarding notice and opportunity to be heard.  *CCUR Aviation Fin.*, 2021 U.S. Dist. LEXIS 83769 at *6-7; *see also Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1133 (D. Ariz. 2006) (incorporating non-party's assets into receivership estate would not violate due process where non-party had adequate notice and opportunity to be heard).

2.      Profit Over Everything, Inc., Centurion TS Holdings, LLC, and Alpha Trader Firm LLC: Clear Evidence of Alter Ego Abuse and Scheme Facilitation.

It is undisputed that the Receiver already possesses ownership and controlling interests in Profit Over Everything, Inc. (100%), Centurion TS Holdings, LLC (100%), and Alpha Trader Firm, LLC (51%).  *See* ECF 354, Receiver's Declaration, Exhibit A, at paragraphs 11-13.  ECF 354 at 19.  As such, the Receiver consents to the expansion of the Receivership and Defendants standing to object is questionable, at best.

Defendants' arguments regarding Santiesteban's entities (Centurion TS Holdings, Alpha Trader Firm LLC, and Profit Over Everything, Inc.) are contradicted by the overwhelming evidence of their direct involvement.   The unsupported assertion that Centurion TS Holdings received no traceable investor funds is false. The Davis Declaration establishes that Centurion TS received at least "$1.8 million in investor funds and $3.75 million in potential investor funds."  Motion at 6, 35 (Table 1).  Similarly, the detailed bank reconstructions demonstrate that Alpha Trader received Potential TD Investors funds and significant amounts from Centurion TS.  ECF 354 at 7, 35 (Table 1).

And Defendant Santiesteban routinely transferred funds from Alpha Trader to his personal accounts for luxury items like jewelry, travel, vehicles, and even his ex-girlfriend's credit card.  ECF 354 at 7.  While Defendants claim that Alpha Trader was funded by an alleged $1,000,000 loan, even if such loan was legitimate, the subsequent use of the entity for funneling investor funds or personal enrichment from illicit sources is sufficient to bring the entity into the Receivership.  Any third party who has a legitimate claim as a creditor could bring a claim on the Receivership.

       3.     <u>JVL Fortini Consulting, LLC: A Vehicle for Fortini's Personal Enrichment from Scheme Proceeds.</u>

Defendants' arguments regarding JVL Fortini Consulting, LLC directly contradict the evidence of its financial entanglement and Fortini's personal benefit. The accusation of an "erroneous time period" and "biased data" are unfounded contrary to the forensic analysis.  The Davis Declaration clearly identifies JVL Fortini Consulting as receiving at least "$65,176 from TD investors and $847,755 from Potential TD Investors."  ECF 354 at 10, 35 (Table 1).  This money flowed from Algo, SAEG, SACAP, and SECAP (ECF 354 at 10), entities demonstrably linked to the overall scheme.

Also, the period identified by the Receiver's forensic accountant corresponds to the period when her analysis reflects that JVL Fortini Consulting was actively involved in receiving investor funds and facilitating the scheme, regardless of the time periods identified in the CFTC's complaint.

The assertion that JVL Fortini Consulting was merely a nightlife business established long before the scheme is irrelevant to its subsequent use within the

fraudulent enterprise.  An entity's historical purpose does not immunize it from inclusion in a receivership if it was subsequently co-opted or used to facilitate a fraudulent scheme.  The evidence shows that during the relevant period of the fraudulent scheme, Fortini routinely transferred funds between JVL Fortini Consulting, his personal checking account, and JVL Fortini Investments, LLC (another entity he controlled).  ECF 354 at 10.  He then used JVL Fortini Consulting funds for extensive personal expenses, including purchasing real property, jewelry, cars, a boat, and his American Express credit card.  ECF 354 at 10.  This pattern establishes an alter ego relationship and an abuse of the corporate form to hide and spend illicit gains, demonstrating that the entity was an instrument of the fraud that is properly brought into the Receivership.  *See Torchia*, 2016 U.S. Dist. LEXIS 147123, at *10-11 (listing factors considered when invoking alter ego doctrine, including (but not limited to) the comingling of funds and other assets; the unauthorized diversion of funds or assets to other than corporate purposes; and the treatment by an individual of corporate assets as his own); *see also SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985) ("The alter ego doctrine, which is remedial in nature, is not applied to eliminate the consequences of corporate operations, but to avoid inequitable results.  To invoke the doctrine against a party, we must find that the party was an actor in the course of conduct constituting the abuse of corporate privilege . . . ."), *aff'd*, 805 F.2d 1039 (9th Cir. 1986).

    4.    <u>Other Sponsor Entities Exhibited Consistent Patterns of Alter Ego and Fraud Facilitation.</u>

Defendants fail to address the specific evidence presented for the remaining sponsor entities, Block Consulting, MAS Capital, GMJ Marketing, Go Long, The Nutrition Zone, and Intelligenza. Defendants' failure to address the evidence presented in the Motion as to these sponsor entities concedes the appropriateness of the expansion Motion. *See Schwarz v. Bd. or Supervisors*, 672 F. App'x 981 (11th Cir. 2017) (affirming summary judgment where plaintiff failed to address defendant's claims in its summary judgment motion response); s*ee also Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) ("if a [party] fails to respond or to otherwise oppose a . . . motion, then the district court may deem the [party] to have waived opposition to the motion.").

## III.  **CONCLUSION**

For the foregoing reasons, and based on the substantial and undisputed evidence presented, the Court should reject the Defendants' attempt to shield these entities and grant the Receiver's Motion to Expand Receivership.

Respectfully submitted,
*/s/ Russell Landy*
Russell Landy
Florida Bar No. 44417
Email: rlandy@dvllp.com
Lauren King
Florida Bar No. 1069351
Email: lking@dvcattorneys.com
DAMIAN | VALORI | CULMO
*Counsel for the Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that November 26, 2025, I electronically filed the foregoing document with the clerk of the U.S. District Court, Southern District of Florida, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Russell Landy*
Russell Landy
