**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-23745-ALTMAN**

**COMMODITY FUTURES**
**TRADING COMMISSION**,

  *Plaintiff*,

v.

**TRADERS DOMAIN FX LTD.**, *et al.*,

  *Defendants.*

_____/

## ORDER ON MOTION TO EXPAND RECEIVERSHIP

Kelly Crawford, the Court-appointed Receiver, has moved to expand the receivership to encompass certain entities that are allegedly owned and controlled by the Defendants. *See* Motion to Expand Receivership (the "Motion") [ECF No. 354]. The Defendants have filed a Joint Response in Opposition to the Motion [ECF No. 361]. The Motion is now fully briefed and ripe for adjudication. *See* Reply in Support of Motion [ECF No. 372]. After careful review, we **GRANT in part** and **DENY in part** the Motion.

### BACKGROUND

On October 3, 2024, we entered our Order Granting the Plaintiff's Expedited Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "Receivership Order") [ECF No. 10]. In doing so, we appointed Kelly Crawford as Receiver over the Defendants' assets. The Receivership Order vested Crawford with "the full powers of an equity receiver for [the] Defendants and their affiliates and subsidiaries owned or controlled by [the] Defendants[.]" *Id.* ¶ 29.

Since his appointment, Crawford has "investigated the ownership and operations of various entities to determine whether they fall within the scope of the Receivership[.]" Motion at 2. Crawford now tells us that he's "uncovered several entities that were owned or controlled by [the] Defendants and/or that were used to perpetuate the Traders Domain ('TD') fraudulent scheme (the 'Related Entities')[.]" *Ibid.* To support this assertion, Crawford has provided a sworn declaration from Melissa Davis, a forensic accountant at KapilaMukamal, LLP. *See generally* Declaration of Melissa Davis (the "Davis Decl.") [ECF No. 354-2]. Davis's declaration includes several findings based on her extensive review of the Related Entities' financial documents and her experience "as a certified public accountant, certified insolvency and restructuring advisor, certified fraud examiner, and as a practitioner addressing fraud investigations, solvency, and restructuring issues for over 20 years." *Id.* ¶ 3.

The Related Entities over which Crawford seeks to expand the receivership can be divided into two groups: the Non-Sponsor-Related Entities and the Sponsor-Related Entities.

## I.      The Non-Sponsor-Related Entities

The first group of Related Entities are four companies that are allegedly owned and controlled by Tin Quoc Tran, the defaulting defendant in a similar CFTC enforcement action *See id.* at 2–3 ("[The] Non-Sponsor [Related Entities] were substantially involved in the Traders Domain [ ] fraudulent scheme, as alleged in the CFTC's Complaint and Motion for SRO. The bank accounts for the Non-Sponsor-Related Entities were all opened and controlled by Tin Quoc Tran [ ], who was closely associated with Defendant, Ted Safranko, and defaulted in a prior CFTC Enforcement Action involving a similar fraudulent scheme orchestrated by Safranko." (cleaned up)). These entities are: SAEG Capital Ltd. ("SAEG"), SACAP Holdings, LLC ("SACAP"), SECAP Holdings, LLC ("SECAP"), and MTT9 Investments LLC ("MTT9") (collectively, the "Non-Sponsor-Related Entities").

## II.     The Sponsor-Related Entities

The second group of Related Entities are ten companies that are "related to individuals and entities that served as Sponsors in the TD fraudulent scheme, as alleged in the CFTC's Complaint." *Id.* at 4–5. These entities are: Block Consulting Services, LLC ("Block"), MAS Capital Investments, LLC ("MAS Capital"), Alpha Trader Firm, LLC ("Alpha Trader"), Profit Over Everything, Inc. ("Profit Over Everything"), Centurion TS Holdings, LLC ("Centurion TS"), GMJ Marketing, LLC ("GMJ Marketing"), Go Long Investments, LLC ("Go Long"), The Nutrition Zone, LLC ("The Nutrition Zone"), Intelligenza, LLC ("Intelligenza"), and JVL Fortini Consulting, LLC ("JVL Fortini Consulting") (collectively, the "Sponsor-Related Entities").

## THE LAW

"A district court has 'broad powers and wide discretion to determine relief in an equity receivership.'" *S.E.C. v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) (quoting *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)). The expansion of a receivership is appropriate "where the requested expansion is necessary to effectively safeguard assets for the benefit of investors and to guard against potential dissipation." *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 WL 1738764, at *2 (S.D. Fla. May 3, 2021) (Bloom, J.) (cleaned up). But a "request to expand the receivership estate should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Ibid.* (cleaned up).

District courts have expanded equity receiverships using "the alter ego doctrine to include entities related to defendants where funds have been commingled or corporate assets used for personal purposes." *S.E.C. v. Torchia*, 2016 WL 6212002, at *3 (M.D. Ga. Oct. 25, 2016) (Duffey, Jr. J.) (citing *S.E.C. v. Elmas Trading Corp.*, 620 F. Supp. 231 (D. Nev. 1985), *aff'd* 805 F.2d 1039 (9th Cir. 1986)).

3

Courts determining whether to expand a receivership based on the alter ego doctrine have considered, among other factors:

> the comingling of funds and other assets; the unauthorized diversion of funds or assets to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities; the identity of equitable ownership in the two entities; the identity of the officers and directors of the two entities, or of the supervision and management; the absence of corporate assets; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; the concealment and misrepresentation of the identity of the responsible ownership, management, and financial interest or concealment of personal business activities.

*Torchia*, 2016 WL 6212002, at *3 (quoting *Elmas*, 620 F. Supp at 234). Some judges have extended this principle to allow receiverships to be expanded over third-party property that was purchased using "scheme proceeds." *S.E.C. v. Nadel*, 2013 WL 2291871, at *2 (M.D. Fla. May 24, 2013) (Lazzara, J.) (finding third-party entity's use of scheme proceeds to purchase oil and gas leases subjected it to inclusion in receivership, despite the fact that it was not an alter ego of the defendant); *see also S.E.C. v. MJ Cap. Funding, LLC*, 2022 WL 2398391, at *2 (S.D. Fla. Mar. 21, 2022) (Singhal, J.) (refusing to reconsider motion to expand where motion was "supported by clear and unrefuted evidence that the Pavel Companies were used as an instrumentality of a Ponzi scheme and received substantial investor funds."). Where a receivership is expanded to include a non-party or its property, that non-party is entitled to notice and an opportunity to be heard. *See CCUR Aviation*, 2021 WL 1738764, at *3 (collecting cases).

## ANALYSIS

Crawford asks us to exercise our "broad discretion" to expand the receivership over "each of the Related Entities" because "they were primarily funded by TD investors or assets of other Receivership Defendants[.]" Motion at 12. We'll address each Related Entity in turn.

## I.      The Non-Sponsor-Related Entities

Crawford first asks us to expand the receivership over the Non-Sponsor-Related Entities, arguing that they "were substantially involved in [the Defendants'] fraudulent scheme, as alleged in the CFTC's Complaint and Motion for SRO." *Id.* at 3. The Defendants counter that adding these entities to the receivership would be inappropriate because Crawford hasn't "identified any judicial or equitable authority permitting expansion of this receivership to entities owned solely by Tin Quoc Tran, a non-party who is not named in this action." Response at 10. Crawford acknowledges that the Non-Sponsor-Related Entities are "owned and controlled" by Tran, who isn't a Defendant in this case. *See* Motion at 3 ("The Receiver's investigation reflects that SAEG Capital, Ltd. [ ] is owned and controlled by Tran."); *ibid.* ("SACAP Holdings, Inc. [ ] is owned and controlled by Tran."); *id.* at 4 ("SECAP Holdings, LLC [ ] is owned and controlled by Tran."); *ibid.* ("MTT9 Holdings, LLC [ ] is owned and controlled by Tran.").

After careful review, we agree with the Defendants. It wouldn't be appropriate for us to expand the receivership over the Non-Sponsor-Related Entities because those entities are owned and controlled by a non-party, and, therefore, can't be deemed the "alter egos" of any Defendant in this case. That the Non-Sponsor-Related Entities benefited from the Defendants' conduct—absent compelling evidence of the Defendants' ownership of the Non-Sponsor-Related Entities—doesn't justify our expansion of the receivership over these entities. Our Receivership Order vested Crawford with authority over the "affiliates and subsidiaries *owned or controlled by Defendants*," Receivership Order ¶ 29 (emphasis added), and Crawford has conceded that the Non-Sponsor-Related Entities aren't owned or controlled by our Defendants, *see* Motion at 2 ("The bank accounts for the Non-Sponsor-Related Entities were all opened and controlled by Tin Quoc Tran[.]"). So, we reject Crawford's request for authority over these entities. *Cf.* Reply at 5 ("This evidence establishes the entities' involvement as conduits in this scheme, making them Related Entities under the SRO.").

Moreover, three of the Non-Sponsor-Related Entities are already part of a receivership Crawford is administering in a different case. *See* Response at 10 ("[T]hese same entities were already part of a court-supervised receivership in *CFTC v. Marcus Todd Brisco, et al.*, Case (S.D. Tex. July 26, 2024) (the 'SAEG Case'), where Judge Rosenthal appointed Kelly Crawford as receiver over Tran's assets, including SAEG Capital Ltd., SACAP Holdings, Inc., and SECAP Holdings, LLC." (citing Exhibit A to the Response (the "SAEG Case Receivership Order") [ECF No. 10-1])); *accord* Reply at 6 ("The Receiver's prior experience [as the receiver in the SAEG Case] is a key reason for his appointment in this case. Indeed, the Receiver's expertise and knowledge of Tran's operations gained from the SAEG Case uniquely positioned him to identify the involvement of Tran's entities in this case."). For this additional reason, we don't think that the requested expansion of *our* receivership "is necessary to effectively safeguard assets for the benefit of investors and to guard against potential dissipation." *CCUR Aviation*, 2021 WL 1738764, at \*2. The Defendants have already been stripped of their authority over, and ability to divert assets from, these entities—an authority that, in the other case, has been given to none other than our own Kelly Crawford. We're confident that, to the extent action is required to protect *our* receivership estate's interest in the Non-Sponsor-Related Entities' property, Crawford—as the receiver in both estates—can pursue that protection through less-drastic means.

We therefore **DENY** Crawford's request to expand the receivership over the Non-Sponsor-Related Entities.[1]

---

[1] Because we're denying Crawford's request to expand the receivership over the Non-Sponsor-Related Entities, we needn't reach the Defendants' argument that "[e]xtending receivership control over Tin Quoc Tran's companies' property interests when neither he nor his companies were named defendants in the Complaint and without proper service would contravene due process." Response at 11.

## II.     The Sponsor-Related Entities

Crawford also asks us to expand the receivership over the ten Sponsor-Related Entities. *See* Motion at 4–5 ("Block Consulting Services, LLC, MAS Capital Investments, LLC, Alpha Trader Firm, LLC, Profit Over Everything, Inc., Centurion TS Holdings, LLC, GMJ Marketing, LLC, Go Long Investments, LLC, The Nutrition Zone, LLC, Intelligenza, LLC, and JVL Fortini Consulting, LLC are related to individuals and entities that served as Sponsors in the TD fraudulent scheme, as alleged in the CFTC's Complaint." (cleaned up)). We'll address the parties' arguments as to each entity below.

### a.   Centurion TS and Profit Over Everything

It's undisputed that Crawford, as Receiver, owns 100% of Centurion TS and Profit Over Everything. *See* Declaration of Receiver Kelly M. Crawford ("Crawford Decl.") [ECF No. 354-1] ¶¶ 11, 13 ("On June 6, 2025, Santi assigned his 100% interest in Centurion TS to me. . . . On June 5, 2025, Santi assigned 100% of his shares and interest in POE to me."); Response at 13 ("[T]he Receiver[] . . . already holds assigned ownership interests in Profit Over Everything and Centurion TS Holdings."); Reply at 7 ("It is undisputed that the Receiver already possesses ownership and controlling interests in Profit Over Everything, Inc. (100%) [and] Centurion TS Holdings, LLC (100%)[.]" (cleaned up)). And Crawford "consents to the expansion of the [r]eceivership" over these entities. Reply at 7. Given Crawford's ownership and consent, we see no reason why the receivership *shouldn't* be expanded to cover these entities.

Additionally, the Davis Declaration establishes that both Centurion TS and Profit Over Everything were "associated with [Defendant] Santiestaban," received millions in scheme proceeds, comingled funds with other Related Entities, and were used to fund Santiestaban's personal purchases. *See* Davis Decl. ¶¶ 36, 45; *see also* Motion at 6 ("Centurion TS Holdings, LLC [ ] was owned and controlled by Defendant, Alejandro Santiesteban a/k/a Alex Santi. . . . Santi routinely transferred funds between Centurion TS, his personal checking accounts, and accounts for other entities

controlled by him, including Alpha Trader Firm, LLC, Profit Over Everything, Inc., and X-Press Transport Solutions, Inc. And, Centurion TS transferred funds to, and received funds from, entities controlled by other Defendants, including GMJ Marketing, LLC and Go Long Investments, LLC." (citing Davis Decl. at 28–29)); *id.* at 7–8 ("Profit Over Everything, Inc. [ ] was wholly owned and controlled by Santi. . . . During the relevant period, POE received at least $3.8 million from Potential TD Investors and $1.1 million from Centurion TS. . . . Santi also used POE funds for his personal expenses, including for purchasing jewelry and paying for the credit card of Thalia Hernandez." (citing Davis Decl. at 45–46.)). For purposes of this Motion, then, the financial evidence Crawford and Davis presented establishes that these entities operated as alter egos of Defendant Santiestaban.

We therefore **GRANT** this part of the Motion.

### b. Alpha Trader

Crawford also asks us to expand the receivership over Alpha Trader. According to Crawford, "Alpha Trader received at least $1.1 million from Potential TD Investors and $450,000.00 from Centurion TS. Santi routinely transferred funds between Alpha Trader, his personal checking accounts, and accounts for other entities controlled by him, including Centurion TS, Profit Over Everything, Inc., and X-Press Transport Solutions, Inc. Santi also used Alpha Trader funds for his personal expenses, including for purchasing jewelry, paying for travel and living expenses, paying for vehicles for his family members, and for paying the credit card of his ex-girlfriend, Thalia Hernandez." Motion at 7 (citing Davis Decl. at 23–24). Moreover, Crawford tells us that he owns 51% of Alpha Trader and, as majority owner, consents to the expansion of the receivership. *See id.* at 13.

The Defendants respond that "Alpha Trader conducted a distinct educational-services business, not investment activity, and its capitalization came mainly from a $1,000,000 loan from a third party[.]" Response at 13. The Defendants also insist—without evidence—that "[n]either Alpha

Trader account ever received customer deposits, investor funds, or transfers traceable to Centurion or any defendant[.]" *Ibid.*

Here too, we agree with Crawford. The Davis Declaration establishes that Alpha Trader functioned as an alter ego of Defendant Santiesteban and his other entities. It received scheme proceeds, was used to fund personal expenses, and comingled funds with other entities Santiesteban controlled. These factors—plus the fact that Crawford, as controlling shareholder of Alpha Trader, consents to its inclusion in the receivership—easily justify this expansion.

As to Alpha Trader, in short, the Motion is **GRANTED**.

### c.   JVL Fortini Consulting

Crawford also seeks to expand the receivership over JVL Fortini Consulting. Crawford tells us that JVL Fortini Consulting is "wholly owned and controlled by Defendant[ ] John Fortini" and that, during the relevant period, "[JVL] Fortini Consulting received at least $65,000 from TD investors and $845,000 from Potential TD Investors. . . . [And] Fortini routinely transferred funds between Fortini Consulting, his personal checking account, and the account for JVL Fortini Investments, LLC, another entity controlled by him. Fortini also routinely used Fortini Consulting funds for his personal expenses, including for purchasing real property, jewelry, cars, and a boat, and for paying his American Express credit card and professional fees." Motion at 10 (citing Davis Decl. at 36–37).

In Response, Defendant Fortini argues that: (1) Crawford wrongly focuses on JVL Fortini Consulting's finances from "August 2020 to October 2024, which do not even match any dates in the Complaint"; (2) Crawford inappropriately relies on JVL Fortini Consulting's receipt of "potential investor" funds; and (3) JVL Fortini Consulting LLC's corporate form remained intact. Response at 14.

Again, we agree with Crawford because the (unrebutted) Davis Declaration establishes that: (1) JVL Fortini Consulting received proceeds from the TD scheme; and (2) JVL Fortini Consulting

functioned as Fortini's alter ego. *See* Davis Decl. ¶ 42 ("JVL Fortini Consulting LLC [ ] is a sponsor entity associated with Fortini. JVL Fortini received $65,176 in investor funds and $847,755 in potential investor funds. In addition to these investor funds, approximately $1.75 million was deposited into JVL Fortini from Algo Capital LLC, which was sourced predominantly by investor funds."). We're also not persuaded by Fortini's argument that his *past* use of JVL Fortini Consulting to manage his "nightlife business" precludes us from finding that the company *later* served as his alter ego. Indeed, Fortini *admits* that he eventually disregarded JVL Fortini Consulting's corporate form. *See* Response at 14 ("It was a corporate form that remained intact – and was not the alter ego of Mr. Fortini – *until* Mr. Fortini was placed under receivership and all bank accounts, including those tied to JVL Consulting, were frozen, thus rendering the corporate entity functionally inoperable." (emphasis added)).

This portion of Crawford's Motion is therefore **GRANTED**.

### d. Block Consulting, MAS Capital, GMJ Marketing, Go Long, the Nutrition Zone, and Intelligenza

Finally, Crawford asks us to expand the receivership to include Block Consulting, MAS Capital, GMJ Marketing, Go Long, the Nutrition Zone, and Intelligenza. *See generally* Motion at 5–9. Crawford explains that each of these entities: (1) was wholly owned and controlled by a defendant; (2) received scheme proceeds; and (3) inappropriately comingled funds with other, related entities. *See ibid.* The Defendants (notably) don't advance any *specific* objection to this expansion and argue only that the Motion as a whole inappropriately relies on speculation in the Davis Declaration. *See* Response at 7 ("[The Motion] relies almost entirely on the Davis Declaration—an analysis built on speculation."). We disagree.

The Davis Declaration is a thorough, competent piece of evidence that includes little in the way of speculation. *See, e.g.*, Davis Decl. ¶ 23 ("To determine the nature of the transactions of the

Analyzed Entities, I prepared a detailed bank reconstruction of the bank account activity for each entity. The bank reconstruction encompasses the Analyzed Entities' bank accounts that I determined received investor funds and/or benefited from investor funds."). The Defendants, by contrast, have offered *no* specific evidence to contradict any of Davis's findings as to these entities. *See* Reply at 4–5 ("Significantly, none of the Defendants provide sworn testimony or any other evidence that the Receiver's tracing is inaccurate or that the entities were not used to perpetuate the fraud and enrich the Defendants").

The unrebutted evidence from the Davis Declaration establishes that these entities satisfy several *Torchia* factors, including "the comingling of funds and other assets," "the unauthorized diversion of funds or assets to other than corporate purposes," and "the identity of equitable ownership[.]" 2016 WL 6212002, at \*3. We therefore **GRANT** the Motion as to Block Consulting, MAS Capital, GMJ Marketing, Go Long, the Nutrition Zone, and Intelligenza.[2]

## CONCLUSION

After careful review, in sum, we **ORDER and ADJUDGE** as follows:

1. The Motion to Expand Receivership [ECF No. 354] is **GRANTED in part** and **DENIED in part**.

   a. The Motion is **DENIED** as to SAEG Capital Ltd., SACAP Holdings, LLC, SECAP Holdings, LLC, and MTT9 Investments LLC.

---

[2] The Defendants contend that the Motion should be denied because the proposed expansion of the receivership "serves no remedial purpose" and would merely "enlarge the receivership's footprint as a matter of punishment." Response at 8–9. But the Defendants have adduced no evidence of any such punitive motive. As best as we can discern, their argument rests entirely on the proposition that Crawford already "holds ownership and control interests in several of the very entities he now seeks to add [to the receivership]" *Id.* at 9; *see also ibid* ("Seeking to 'expand' the receivership to cover entities he already owns or controls, therefore serves no remedial purpose; it would simply enlarge the receivership's footprint as a matter of punishment."). For all the reasons we've outlined already, we think some of Crawford's requested expansions make sense given the circumstances of this case— irrespective of his ownership and control over some of the newly included entities.

b. The Motion is **GRANTED** as to Block Consulting Services, LLC, MAS Capital Investments, LLC, Centurion TS Holdings, LLC, Alpha Trader Firm, LLC, Profit Over Everything, Inc., GMJ Marketing, LLC, Go Long Investments, LLC, The Nutrition Zone, LLC, Intelligenza, LLC, and JVL Fortini Consulting, LLC.

**DONE AND ORDERED** in the Southern District of Florida on March 13, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record